**ABRAHAM & ROSE, P.L.C.,**
**Plaintiff–Appellant,**

v.

**UNITED STATES of America,**
**Defendant–Appellee.**

**No. 96–2531.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 2, 1997.

Decided March 13, 1998.

Jerry R. Abraham (argued), Maurice A. Rose (argued and briefed), Abraham & Rose, Farmington Hills, MI, for Plaintiff–Appellant.

Murray S. Horwitz (argued and briefed), Jonathan S. Cohen (briefed), Charles H. Keen, U.S. Department of Justice, Appellate Section, Tax Division, Washington, DC, for Defendant–Appellee.

Before: BOGGS and MOORE, Circuit Judges; DOWD, District Judge.*

### OPINION

MOORE, Circuit Judge.

Plaintiff-Appellant, Abraham & Rose, P.L.C., appeals the district court's order granting summary judgment to defendant-appellee, the United States of America, acting through the Internal Revenue Service (the "IRS"), in this action brought under the Freedom of Information Act ("FOIA"), 5

U.S.C. § 552. For the reasons that follow, we reverse and remand.

### I. BACKGROUND

In January 1996, pursuant to FOIA, appellant requested access to computerized records of federal tax lien filings[1] from the Detroit and Cleveland Districts of the IRS. J.A. at 25–26 (Exs.1, 2). The IRS, citing various FOIA exemptions, denied appellant's FOIA requests. J.A. at 27–29 (Exs.3, 4). Appellant then filed an administrative appeal with the Commissioner of Internal Revenue. J.A. at 34 (Ex. 6). When appellant received no formal response from IRS officials with regard to its appeal within the statutorily set 20–working–day response period, appellant commenced this action in federal court on May 21, 1996 for declaratory and injunctive relief. *See* 5 U.S.C. § 552(a)(6)(A)(ii) and 552(a)(6)(C); J.A. at 4 (Compl.).

The district court denied appellant's motion for summary judgment and instead granted the government's cross-motion for summary judgment, based on its conclusion that (1) "the information plaintiff seeks is already public information in the various counties"; and (2) "plaintiff's request appears to be inapposite to the purpose of FOIA" since "[p]laintiff seeks information about private citizens for its own business purposes." J.A. at 7–8 (Order at 2–3). Having resolved the case on such grounds, the district court decided that it no longer needed to consider whether any exemptions applied to appellant's requests. J.A. at 8 (Order at 3). Both appellant and appellee agree that the district court's order was grounded on faulty reasoning as a matter of law, but while appellant further contends that the requested information does not fall within any FOIA exemption category, the government argues that it does. The district court had original jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B). This court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 over

---

\* The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

**1.** A federal tax lien is a claim by the IRS which arises against all property of a taxpayer who fails

to fulfill a tax payment obligation. Notices of Federal Tax Lien are recorded publicly so that the IRS can protect the legal priority of its liens as against other creditors of the taxpayer. J.A. at 73–74 (Hebert Decl. at 1–2).

the district court's final judgment in the instant case.

## II. ANALYSIS

### A. Standard of Review

Under FOIA, "each agency, upon any request for records which (A) reasonably describes such records and (B) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3). This mandate does not apply however to information that falls within any of nine specific exemption categories listed at 5 U.S.C. § 552(b). An agency's decision to deny a FOIA request is subject to de novo review by a district court. *See* 5 U.S.C. § 552(a)(4)(B); *Detroit Free Press, Inc. v. Department of Justice*, 73 F.3d 93, 95 (6th Cir.1996). The propriety of a district court's grant of summary judgment in a FOIA proceeding is similarly reviewed de novo on appeal. *See Detroit Free Press*, 73 F.3d at 95.

### B. Availability through Alternative Sources

■ Both parties on appeal contend that the district court erred when it decided not to address the applicability of the FOIA exemptions and instead withheld the information requested because it was already public information and available to appellant through a search of county records. J.A. at 7 (Order at 2); Appellant's Br. at 11–13; Appellee's Br. at 16–18. The parties are correct that this was an inappropriate basis for exemption under FOIA and that the district judge committed an error of law. In *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989), the Supreme Court explicitly rejected the proposition that the requested information—certain district court opinions—was properly withheld under FOIA by the Tax Division of the Department of Justice because the information was already publicly available. *See id.* at 150, 109 S.Ct. at 2850–51. The government in *Tax Analysts* argued, among other things, that "the structure of [FOIA] evinces Congress' desire to avoid redundant disclosures." *Id.* at 152, 109 S.Ct. at 2852. The Supreme

Court rejected this argument, concluding that "[a]n agency must disclose agency records to any person under § 552(a), 'unless they may be withheld pursuant to one of the nine enumerated exemptions listed in § 552(b).'" *Id.* at 150–51, 109 S.Ct. at 2851 (quoting *United States Dep't of Justice v. Julian*, 486 U.S. 1, 8, 108 S.Ct. 1606, 1611, 100 L.Ed.2d 1 (1988)). The Supreme Court further established that the exemptions are "'explicitly exclusive'" and that therefore "agency records which do not fall within one of the [nine] exemptions are improperly withheld." *Id.* at 151, 109 S.Ct. at 2851 (quoting *FAA Adm'r v. Robertson*, 422 U.S. 255, 262, 95 S.Ct. 2140, 2146, 45 L.Ed.2d 164 (1975) (internal quotation marks omitted)).

### C. Purpose of Request

■ Courts have often commented that one of the main driving forces behind the enactment of FOIA was Congress's goal of opening up "'agency action to the light of public scrutiny.'" *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772, 109 S.Ct. 1468, 1481, 103 L.Ed.2d 774 (1989) (quoting *Department of the Air Force v. Rose*, 425 U.S. 352, 372, 96 S.Ct. 1592, 1604, 48 L.Ed.2d 11 (1976)). Yet, according to the parties before us today, whether or not a requester's purpose for information is consistent with this congressional purpose is not a proper factor, in and of itself without any regard to the applicability of any of the exemptions, to deny a request for access to information under FOIA. Appellant's Br. at 13–15; Appellee's Br. at 14–15. Case law suggests that the parties are correct that the district court below committed another error of law. First, as mentioned above, the Supreme Court has clearly announced that "[a] federal agency must disclose agency records [appropriately requested] unless they may be withheld pursuant to one of the nine enumerated exemptions listed in § 552(b)." *Julian*, 486 U.S. at 8, 108 S.Ct. at 1611; *see also Jones v. FBI*, 41 F.3d 238, 244 (6th Cir.1994). Basing a denial of a FOIA request on a factor unrelated to any of these nine exemptions clearly contravenes this dictate. In general, any member of the public may invoke FOIA to obtain disclosure of agency records without regard to whether the requester has shown a

need for the information; the requester's intended use is also irrelevant in a FOIA action. *See Parke, Davis & Co. v. Califano,* 623 F.2d 1, 7 (6th Cir.1980) ("It is settled that the rights of a FOIA requester are neither increased nor decreased by the fact that the requester has an interest in the documents which is greater than that of the general public.") (citing *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 143 n. 10, 95 S.Ct. 1504, 1513 n. 10, 44 L.Ed.2d 29 (1975)); *McDonnell v. United States,* 4 F.3d 1227, 1237 (3d Cir.1993); *North v. Walsh,* 881 F.2d 1088, 1096 (D.C.Cir.1989). Even in evaluating the applicability of various exemptions, courts have generally remained consistent with the notion that " '[t]he Act's sole concern is with *what* must be made public or not made public' " rather than with the identity [2] of the person requesting the information or the "particular purpose for which the document is being requested." *Reporters Comm.,* 489 U.S. at 772, 109 S.Ct. at 1481 (quoting Kenneth Culp Davis, *The Information Act: A Preliminary Analysis,* 34 U. CHI. L.REV. 761, 765 (1966–67)) (emphasis added); *see also United Technologies Corp. v. FAA,* 102 F.3d 688, 690 (2d Cir.1996), *cert. denied,* — U.S. —, 117 S.Ct. 2479, 138 L.Ed.2d 988 (1997) (noting that "[i]t is a basic principle under FOIA that the individuating circumstances of a requester are not to be considered in deciding whether a particular document should be disclosed."). Moreover, regardless of how a requester's purpose or intended use of the requested information might affect a court's analysis *under* a particular exemption, the district court below certainly erred when it considered this factor in a vacuum *without giving any thought* to the applicability of any of the exemptions.

## D. FOIA Exemptions

The proper course would have been for the district court to determine whether any exemptions applied in the instant case and then

to deny the FOIA requests to the extent that any did. In general, the agency denying a FOIA request bears the burden of establishing that the information requested falls within an exemption category. *See* 5 U.S.C. § 552(a)(4)(B); *Kiraly v. FBI,* 728 F.2d 273, 276 (6th Cir.1984). Furthermore, even if a section of a document is determined to be exempt, "[a]ny *reasonably* segregable portion of [the] record shall be provided to any person requesting such record after deletion of [the exempt] portions...." 5 U.S.C. § 552(b) (emphasis added).

### 1. Exemption 2

■ Appellee's first claim is that the requested records of federal tax lien filings were properly withheld from appellant in their entirety pursuant to Exemption 2 which permits the withholding of materials "related solely to the internal personnel rules and practices of an agency." *See* 5 U.S.C. § 552(b)(2). The crux of appellee's argument is that the records requested by appellant are covered by Exemption 2 simply because such records are generated through the Automated Lien System (ALS) of the IRS, the "electronic database which serves as the Service's centralized repository of information related to Federal tax liens." Appellee's Br. at 21 (quotation from J.A. at 73 (Hebert Decl. at 1)). According to Thomas Hebert, the program analyst responsible for the ALS, the database is used as "an internal tool to enable the Service to create and monitor its filings of Notices of Federal Tax Lien." J.A. at 74 (Hebert Decl. at 2). Notices of Federal Tax Lien are prepared from the data compiled in the ALS, and the database also aids IRS personnel in ensuring the release of such liens when they are satisfied. J.A. at 74 (Hebert Decl. at 2). Some of the information contained in the ALS is incorporated into publicly recorded filings, but other types of information not available in these public records are also contained in the system.[3] J.A.

---

**2.** An exception should be noted for those cases where "the objection to disclosure is based on a claim of privilege and the person requesting disclosure is the party protected by the privilege." *Reporters Comm.,* 489 U.S. at 771, 109 S.Ct. at 1480–81.

**3.** In an attempt to clarify any confusion that might have existed regarding the exact scope of its request, appellant stated in its final appeals

brief that "[n]o request has ever been made for private or confidential information or for information not potentially available in the public domain." Appellant's Br. at 3. Appellant insists that it was requesting only federal tax lien information that was already publicly filed and nothing else that might also be contained in the ALS. At oral argument, appellant reiterated this point and further clarified that its request was for *either* photocopies of documents prepared for

at 74–75 (Hebert Decl. at 2–3). The requested records' association with the ALS arguably relates to rules and practices of agency personnel in two respects. First, one could argue that the requested records shed light on the IRS's personnel practice of collecting information through the ALS. Second, appellant suggests that such a relationship exists because the ALS and everything derived from it, including the requested records, were designed solely for internal agency use. However, as the following discussion shows, neither is a sufficient basis for invoking the protections of Exemption 2.

 Under the first prong of a two-prong test used to determine the applicability of Exemption 2, the withheld information must come within the terms of the statutory language.[4] *See Schwaner v. Department of the Air Force,* 898 F.2d 793, 794 (D.C.Cir. 1990). The D.C. Circuit has interpreted the word "solely" in this context to mean "predominantly," reasoning that a literal interpretation would render Exemption 2 useless since virtually all internal personnel rules and practices will ultimately have some impact on the public-at-large. *See Crooker v. Bureau of ATF,* 670 F.2d 1051, 1056 (D.C.Cir.1981) (en banc); *Schwaner,* 898 F.2d at 795. We find this conclusion to be sound and persuasive. Moreover, we agree with the Ninth, Tenth, and D.C. Circuits that the phrase should not be read disjunctively and that "internal personnel" modifies both "rules" and "practices." *See Maricopa Audubon Soc'y v. United States Forest Serv.,* 108 F.3d 1082, 1086 (9th Cir.1997) (citing *Audubon Soc'y v. United States Forest Serv.,* 104 F.3d 1201, 1204 (10th Cir.1997)); *Jordan v. United States Dep't of Justice,* 591 F.2d 753, 764 (D.C.Cir.1978) (en banc). Not only is this the most logical reading of the phrase

from a grammatical standpoint, but as these other circuits and the Supreme Court have mentioned, the current language of Exemption 2 was specifically intended to be a narrowing of Exemption 2's predecessor which implicated "any matter relating solely to the internal management of an agency" and which Congress believed to be overly broad. 5 U.S.C. § 1002 (1964) (quoted in *Jordan,* 591 F.2d at 765 n. 39); H.R.REP. NO. 89–1497 (1966), reprinted in 1966 U.S.C.C.A.N. 2418, 2422–23 (cited in *Audubon Soc'y,* 104 F.3d at 1204); *see also Rose,* 425 U.S. at 362–63, 96 S.Ct. at 1599–600 (concluding that legislative history evinces an intention to give Exemption 2 a narrower reach than that of its predecessor). Thus, the agency evoking Exemption 2 must first show that the requested information sought to be sheltered from disclosure relates predominantly to an agency's internal "rules and practices" for personnel.

 It is true that information deemed to be related predominantly to personnel rules and practices of an agency need not be actual rules and practices themselves; the information can be so closely related to an agency's personnel rules and practices that disclosure could lead potentially to their disclosure. *See Schwaner,* 898 F.2d at 796. For example, at the most basic level, Exemption 2 has been used to justify the deletion from disclosed documents of various FBI symbol and file numbers used internally to identify confidential sources, see *Jones,* 41 F.3d at 244–45; *Davin v. United States Dep't of Justice,* 60 F.3d 1043, 1064–65 (3d Cir.1995); *Massey v. F.B.I.,* 3 F.3d 620, 622 (2d Cir.1993); *Silets v. United States Dep't of Justice,* 945 F.2d 227, 230 (7th Cir.1991) (en banc); *Lesar,* 636 F.2d at 485–86; *Wightman v. Bureau of ATF,* 755 F.2d 979, 982 (1st Cir.1985), and notations on

---

filing *or* computer print-outs and that it was only interested in receiving records of lien filings pertaining to liens that had not yet been released. It seems appellant has been refining the scope of its request during the course of this appeal such that the nature of its request may now be somewhat different from what had been previously presented before the district court. We leave it to the district court to clarify the time period for which the request is being made and any other details concerning the exact scope of the appellant's request.

4. Upon passing this first hurdle, in order to claim protection under Exemption 2, the agency must further show that the public has no genuine or legitimate interest in the requested information. *See Rose,* 425 U.S. at 369–70, 96 S.Ct. at 1603–04; *Jones,* 41 F.3d at 244 (agreeing that Exemption 2 pertains to "'routine matters' of 'merely internal significance' in which the public lacks any substantial or legitimate interest" (internal quotation omitted)); *Lesar v. United States Dep't of Justice,* 636 F.2d 472, 485 (D.C.Cir. 1980). However, in light of our analysis and conclusions under the first prong, discussion of this second prong will be unnecessary.

documents that identify administrative handling or routing instructions for documents, *see Founding Church of Scientology of Washington, D.C., Inc. v. Smith,* 721 F.2d 828, 831 (D.C.Cir.1983); *Nix v. United States,* 572 F.2d 998, 1005 (4th Cir.1978). These types of information have the potential for disclosing personnel practices as to interagency routing or the method by which personnel identify informants. The Air Force Academy's case summaries of its honor and ethics hearings at issue in *Rose,* 425 U.S. at 369, 96 S.Ct. at 1603,[5] could have potentially revealed the agency's practice for control and discipline of personnel and its method of rule implementation. *See Schwaner,* 898 F.2d at 796. Moreover, the sensitive nature of certain information such as FBI informant codes gives the government in such cases a significant interest in nondisclosure. *See id.* (explaining that the "willingness [for a court] to sanction a weak relation to 'rules and practices' may be greatest when the asserted government interest is relatively weighty").

■ However, information that merely has a potential for shedding light *on the practice of collecting and compiling information* is not sufficiently related to a personnel rule or practice to satisfy the first prong under Exemption 2 analysis. In *Schwaner,* the D.C. Circuit rejected the argument that, merely because the information requested in that case—various lists of names and duty addresses of Air Force base personnel—had been exclusively derived from the Air Force's Advanced Personnel Data System (a compilation of information extracted from various files and databases), they were sufficiently related to internal personnel rules and practices of the Air Force. *See id.,* 898 F.2d at 795. The government maintained that the lists were "related to" the database system in the sense that they were generated from it. However, the court believed that the statutory language of Exemption 2 required more— it required that the lists shed *significant* light on an internal rule or practice. *See id.* at 797. The court reasoned that the only other practice claimed by the government to be implicated, besides a "tenuous and indirect" link to "duty assignment rules and

practices," *see id.* at 798, was the practice of collecting and compiling information (as signified by the database system) and that such a practice could not be considered a "personnel practice" because otherwise practically all information any agency ever gathers would be exempt under Exemption 2. *See Schwaner,* 898 F.2d at 795–96 ("As bureaucracy is nothing if not a creature of habit...."). A similar line of thought was adopted by the Ninth Circuit in deciding a case in which the requester sought access to maps indicating the location of northern goshawk nest sites compiled by the Forest Service. The Forest Service claimed that disclosure of such information would shed light on the agency's practice of creating information. *See Maricopa Audubon Soc'y,* 108 F.3d at 1085. Following the D.C. Circuit's decision and reasoning in *Schwaner,* the Ninth Circuit rejected the Forest Service's argument on the basis that the requested "information ... b[ore] no *meaningful* relationship to the 'internal personnel rules and practices' of the Forest Service." *Id.* at 1086 (emphasis added). We agree with the Ninth and D.C. Circuits and reject the claim that materials manifesting only an agency's "practice of collecting information" are sufficiently related to an internal personnel rule or practice to be covered by the statutory language of Exemption 2.

Moreover, the mere fact that the requested information is part of a system designed specifically for internal agency use and that personnel use the materials in carrying out their responsibilities does not alter this conclusion. Appellee emphasizes the decision in *KTVY–TV v. United States,* No. 87–1432–T (W.D.Okla. May 4, 1989), *aff'd on other grounds by* 919 F.2d 1465 (10th Cir.1990), in which the District Court for the Western District of Oklahoma concluded that a computerized index of evidence compiled by the U.S. Postal Service as part of its criminal investigation into a shooting incident caused by an employee at the U.S. Post Office is exempt under 5 U.S.C. § 552(b)(2). J.A. at 100 (Order). The only basis provided by the district court for its conclusion was its determination that the index was "used solely for internal agency purposes." *Id.* at 15 (J.A. at 114). Appellee urges this court to adopt a similar line of reasoning. Yet, we decline

---

5. The Supreme Court ultimately decided that Exemption 2 did not apply because genuine and significant public interest existed in the Acade-my's student-run system of discipline. *See Rose,* 425 U.S. at 369, 96 S.Ct. at 1603.

this invitation because we believe this is neither a proper nor prudent criterion for determining whether certain materials are related predominantly to internal personnel rules and practices of an agency. To adopt such a standard would render Exemption 2 all-encompassing. For this same reason, the Tenth Circuit in *Audubon Society* rejected the idea that such a relationship could be established simply by showing that the materials "assist ... personnel in their management duties." *Id.*, 104 F.3d at 1204. Moreover, as we have already noted, legislative history clearly shows that Congress intended for Exemption 2 to cover less than its predecessor which implicated "any matter relating solely to the internal management of an agency." 5 U.S.C. § 1002 (1964) (quoted in *Jordan*, 591 F.2d at 765 n. 39); H.R.Rep. No. 89–1497 (1966), reprinted in 1966 U.S.C.C.A.N. 2418, 2422–23 (cited in *Audubon Soc'y*, 104 F.3d at 1204).

In the instant case, the IRS makes too sweeping a claim in arguing that simply because the ALS is an internal database designed for internal use by personnel, this database or the records created from this database shed significant light on a personnel rule or practice. While the ALS aids IRS personnel in carrying out their responsibilities of preparing and monitoring federal tax lien filings, there is no evidence suggesting that the ALS signifies anything more than the IRS's practice of collecting and compiling information from various sources, like the database at issue in *Schwaner*. In this sense, the requested records are more similar to the list of names and duty addresses of Air Force base personnel and the maps identifying the location of birds tracked by the U.S. Forest Service than to the ethics hearing summaries discussed in *Rose*. We conclude that the practice of compiling information is not a personnel practice under Exemption 2 and that this is not any more of a personnel practice simply because the information collected was intended solely for internal use. We thus hold that the requested records' mere derivation from the ALS as

presented by appellant on this appeal is insufficient to create the significant, meaningful relationship with IRS internal personnel rules and practices required by Exemption 2's statutory language. This decision regarding the scope of Exemption 2 as a matter of law does not, however, preclude the district court from otherwise finding that certain particular pieces or types of information contained on the records of tax lien filings or in the ALS fall within the scope of Exemption 2, as courts have found with respect to confidential FBI informant codes and inter-agency document handling instructions.

### 2. Exemptions 6 and 7(C)

Appellant also claims protection from Exemptions 6 and 7(C). Exemption 6 allows a federal agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," and Exemption 7 permits the withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. §§ 552(b)(6), 552(b)(7)(C). Although this court's review is de novo, because there remains some confusion regarding the exact content of the federal tax lien filings and the various types of personal information that might be contained in even publicly-filed lien documents, this case will be remanded for the district court to take oral testimony, to receive evidence, or to conduct an in camera inspection if it believes doing so would be appropriate and then to make a determination regarding the applicability of these two exemptions.[6] *See* 5 U.S.C. § 552(a)(4)(B) (permitting but not requiring a district court to examine the contents of the relevant agency records in camera in order to determine the applicability of any exemptions).

---

**6.** In *Vaughn v. United States*, 936 F.2d 862 (6th Cir.1991), this court clarified its position that "[w]hile a court is certainly free to take various types of evidence such as detailed affidavits, sampling of documents *in camera*, or oral testimony, a court is not required to follow any particular course if it is otherwise able to make [an] independent, reasoned judgment" consistent with the

following ultimate goals: (1) to " 'assure that a party's right to information is not submerged beneath government obfuscation and mischaracterization, and (2)[to] permit the court system effectively and efficiently to evaluate the factual nature of disputed information.' " *Id.* at 869, 867 (quoting *Vaughn v. Rosen*, 484 F.2d 820, 826

We do note, however, that certain principles of law with respect to Exemptions 6 and 7(C) have been clearly established. First, Exemption 7 has already been determined to apply not only to information compiled for criminal enforcement purposes but also to that compiled for civil enforcement purposes. *See White v. IRS,* 707 F.2d 897, 901 (6th Cir.1983). Second, with respect to Exemption 6, this court has clearly explained that "a 'similar' file [is] not to be construed as encompassing 'a narrow class of files containing only a discrete kind of personal information;'" rather, "Exemption 6 [is] to be applied to 'any Government records on an individual which can be identified as applying to that individual.'" *Heights Community Congress v. Veterans Admin.,* 732 F.2d 526, 528 (6th Cir.), *cert. denied,* 469 U.S. 1034, 105 S.Ct. 506, 83 L.Ed.2d 398 (1984) (quoting *United States Dep't of State v. Washington Post Co.,* 456 U.S. 595, 602, 102 S.Ct. 1957, 1961, 72 L.Ed.2d 358 (1982)). Third, a clear privacy interest exists with respect to such information as names, addresses, and other identifying information [7] even if such information is already available on publicly recorded filings. *See United States Dep't of Defense v. Federal Labor Relations Auth.,* 510 U.S. 487, 500, 114 S.Ct. 1006, 1015, 127 L.Ed.2d 325 (1994) (noting that "an individual's interest in controlling the dissemination of information regarding personal matters does not dissolve simply because that information may [already] be available to the public in some form"); *Reporters Comm.,* 489 U.S. at 770, 109 S.Ct. at 1480 (concluding that "the fact that 'an event is not wholly private does not mean that an individual has no interest in limiting disclosure or dissemination of the information.'" (quoting William H. Rehnquist, *Is an Expanded Right of Privacy Consistent with Fair and Effective Law Enforcement?,* Nelson Timothy Stephens Lectures, University of Kansas Law School, pt. 1, p. 13 (Sept. 26–27, 1974))); *Norwood v. FAA,* 993 F.2d 570, 574 (6th Cir.1993); *Wine Hobby USA, Inc. v. United States IRS,* 502 F.2d 133, 136–37 (3d Cir.1974) ("[T]here are few things which pertain to an individual in which his privacy has traditionally been more respected than his own home."). Finally, even if the public may have an interest in how the IRS exercises its power over the collection of taxes, this does not necessarily mean that the identity or other personal information of individual taxpayers is relevant to shedding light on an agency's performance of its statutory duties. *See Federal Labor Relations Auth.,* 510 U.S. at 497–98, 114 S.Ct. at 1013–14; *United States Dep't of State v. Ray,* 502 U.S. 164, 175 & n. 10, 112 S.Ct. 541, 547–48 & n. 10, 116 L.Ed.2d 526 (1991); *Detroit Free Press,* 73 F.3d at 96.

### III. CONCLUSION

Since the district court based its decision to deny a FOIA request on inappropriate factors as a matter of law, the judgment of the district court is **REVERSED.** We remand this case to the district court for consideration of the availability of exemptions in accordance with this opinion, and for any other further proceedings consistent with this opinion.

---

(D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974)).

**7.** Hebert did state that information such as a taxpayer's name, address, and "other identifying information" contained in the ALS is incorporated by the IRS into publicly recorded Notices of Federal Tax Lien. J.A. at 74 (Hebert Decl. at 2).