**DAYTON NEWSPAPERS, INC., et al., Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF THE NAVY, et al., Defendants.**

**No. C–3–95–328.**

United States District Court,
S.D. Ohio,
Western Division.

May 18, 1999.

Robert Perry Bartlett, Jr., David Reid, Coolidge Wall Womsley & Lombard, Dayton, OH, for Plaintiffs.

Greg Gordon Lockhart, U.S. Attorney's Office, Dayton, OH, Edward S. White, JAGC, Maria Chapa, JA, C.R. Donovan, Office of Judge Advocate General, Dept. of Navy, General Litigation Div., Alexandria, VA, for Defendants.

**DECISION AND ENTRY SUSTAINING DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT (DOC. # 36), INSOFAR AS IT SEEKS TO PREVENT THE DISCLOSURE OF COURT–MARTIAL MEMBERS' QUESTIONNAIRES; TERMINATION ENTRY.**

RICE, Chief Judge.

This litigation arises from the Plaintiffs' attempt to obtain information from the

United States government pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. After exhausting their administrative remedies, the Plaintiffs filed the present lawsuit, seeking a variety of computer records, military court-martial files, and military court documents. In a lengthy September 12, 1996, Decision and Entry, the Court resolved most of the issues raised by the Plaintiffs' FOIA requests. (Doc. # 26). With respect to certain issues, however, the Court reasoned that it needed a more detailed factual record before addressing the Defendants' claimed FOIA exemptions. Consequently, the Court directed the Defendants to submit a *Vaughn* index setting forth a variety of information.

After reviewing the index, the Court filed a September 8, 1997, Decision and Entry, addressing the previously unresolved issues. (Doc. # 38). In so doing, the Court ruled upon the majority of the Plaintiffs' FOIA requests. With respect to one discrete issue, however, the Court found itself still unable to resolve the parties' dispute, based upon the existing record. That issue concerns the extent to which the FOIA compels disclosure of questionnaires completed by military court-martial members, whom the Court has found to be analogous to civilian jurors. In particular, the Defendants' *Vaughn* index did not enable the Court to ascertain the privacy interests implicated by the individual questionnaire responses. As a result, the Court directed the Defendants to produce the court-martial members' questionnaires for an *in camera* inspection. The completed questionnaires subsequently were filed under seal on October 8, 1997. (Doc. # 41).

As a means of analysis, the Court briefly will reiterate the law governing the Plaintiffs' FOIA request for disclosure of the questionnaires.[1] The Court then will review the questionnaires and identify what information, if any, is subject to release under the FOIA.

## I. *The Law of the Freedom of Information Act*

 The FOIA "seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands." *EPA v. Mink,* 410 U.S. 73, 80, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). "[T]he strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents." *United States Dept. of State v. Ray,* 502 U.S. 164, 173, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991). This burden remains on the agency "when it seeks to justify the redaction of identifying information in a particular document as well as when it seeks to withhold an entire document." *Id.*

Although the FOIA creates a presumption of disclosure, the Act also contains nine exemptions, which allow government agencies to withhold certain information. In its September 12, 1996, Decision and Entry, the Court concluded that the exemption set forth in 5 U.S.C. § 552(b)(7)(C) might apply to the information contained in the court-martial members' questionnaires. (Doc. # 26 at 50). That exemption allows the government to withhold "(7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy."[2] The applicability of Exemption 7(C) depends upon a balancing

---

1. In a prior sixty-nine-page Decision and Entry, the Court set forth a detailed analysis of the underlying facts, the applicable legal standards under the FOIA, and the Plaintiffs' claims. (*See, generally,* Doc. # 26). In lieu of repeating that lengthy analysis, the Court will confine its discussion to the sole remaining issue: whether, and to what extent, the FOIA compels the Defendants to release questionnaires completed by court-martial members.

2. The Defendants previously argued that court-martial records constitute records "compiled for law enforcement purposes"

of the public and private interests to determine whether the withheld information should be disclosed. (Doc. # 26 at 26).

■ The privacy interest implicated by the FOIA is "the individual interest in avoiding disclosure of personal matters." *U.S. Department of Justice v. Reporters Committee for Freedom of Press*, 489 U.S. 749, 762, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). "An invasion of privacy occurs when disclosure would subject a person to embarrassment, harassment, physical danger, disgrace, or loss of employment or friends." *Kilroy v. National Labor Relations Bd.*, 633 F.Supp. 136 (S.D.Ohio 1985), *aff'd*, 823 F.2d 553, 1987 WL 38055 (6th Cir.1987) (unpublished decision). Notably, a privacy interest may exist even though private information has been made public, particularly if the information may have been "wholly forgotten." *Reporters Committee*, 489 U.S. at 769, 109 S.Ct. 1468, citing *Department of Air Force v. Rose*, 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976).

■ The only relevant public interest to be weighed against an individual's privacy interest "is the extent to which disclosure would serve the core purpose of the FOIA, which is contributing significantly to public understanding of the *operations or activities of the government.*" *United States Dept. of Defense v. Federal Labor Relations Authority*, 510 U.S. 487, 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994), quoting *Reporters Committee*, 489 U.S. at 775, 109

S.Ct. 1468 (Emphasis in original). In other words, the basic purpose of the FOIA is "to open agency action to the light of public scrutiny," and to allow citizens to "be informed about what their government is up to." *Reporters Committee*, 489 U.S. at 772–773, 109 S.Ct. 1468. Thus, whereas information "that sheds light on an agency's performance of its statutory duties" would serve FOIA's core purpose, that purpose "is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *Id.* at 773, 109 S.Ct. 1468.

In its September 12, 1996, Decision and Entry, the Court recognized that when the public interest in disclosure of withheld information is actually or virtually non-existent, even a very slight privacy interest will justify non-disclosure. Doc. # 26 at 29, citing *Federal Labor Relations Authority*, 510 U.S. 487, 114 S.Ct. 1006, 127 L.Ed.2d 325 ("Because a very slight privacy interest would suffice to outweigh the [virtually non-existent] public interest, we need not be exact in our quantification of the privacy interest."). Simply put, something will outweigh nothing every time. (*Id.*).

## II. The First Amendment and Access to Juror Questionnaires

In fourteen records provided to the Plaintiffs, Defendant Navy has redacted

---

within the meaning of Exemption 7(C). (Doc. # 18 at 4–5). In so doing, they reasoned: ... Court martial[s] try military personnel for criminal violations of the Uniform Code of Military Justice.... The record of trial produced from a court-martial is compiled to memorialize the trial and subsequent proceedings, and to aid appellate courts in reviewing the proceedings.... All [of] these records are produced as a direct result of the military's efforts to enforce military law. Investigatory records, which merely uncover facts used in prosecutions, are clearly law enforcement records under 5 U.S.C. § 552(b)(7)(C).... The records that result from the actual enforcement proceeding itself, i.e. the trial, must also be considered as law enforcement

records. These records, therefore, meet the threshold requirement of Exemption 7(C). (Doc. # 18 at 4–5). In response, the Plaintiffs made no substantive argument concerning whether court-martial records qualify as "records compiled for law enforcement purposes." Instead, the Plaintiffs argued that no unwarranted invasion of personal privacy existed, even if the court-martial records did qualify as "records compiled for law enforcement purposes" under Exemption 7(C). (Doc. # 23 at 9). In a prior ruling, the Court accepted, with little discussion, the Defendants' assertion that the court-martial records, including the court-martial members' questionnaires, implicated Exemption 7(C). (Doc. # 26 at 50).

questionnaires completed by the court-martial members (Counts Two and Five). Both parties have asserted that these court-martial members are analogous to civilian jurors (Doc. # 18, p. 8; Doc. # 23, p. 8), and the Court previously agreed that the same types of interests are involved. (Doc. # 26 at 48). Therefore, in identifying and balancing the relevant interests, the Court cited First Amendment case law developed in relation to civilian jurors. (*Id.*).

In so doing, the Court recognized that the First Amendment right of access to public trials requires *voir dire* proceedings to be open to the public, unless a juror requests the opportunity to answer specific questions privately, and the court determines that "closure is essential to preserve higher values and is narrowly tailored to serve that interest." Doc. # 26 at 48, citing *Press–Enterprise Co. v. Superior Court of Cal.*, 464 U.S. 501, 510, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984); *see id.* at 516, 104 S.Ct. 819 (Stevens, J., concurring) ("The constitutional protection for the right of access that the Court upholds today is found in the First Amendment, rather than the public trial provision of the Sixth."). As this Court previously noted, the right of access to criminal trials "permits the public to participate in and serve as a check upon the judicial process—an essential component in our structure of self-government." Doc. # 26 at 49, quoting *Globe Newspaper Co. v. Superior Court for County of Norfolk*, 457 U.S. 596, 606, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982). Consequently, the Court reasoned that court-martial members' questionnaires are presumably subject to public review, along with other aspects of trial court proceedings.

The Court also reasoned that the public interests underlying the First Amendment and the FOIA are closely aligned. Both provisions contribute significantly to public understanding of the operations or activities of the government, open agency action to public scrutiny, and allow citizens to be informed about what their government is up to. (Doc. # 26 at 49). As a result, the Court determined that the holding of *Press–Enterprise*, which concerned the petitioner's request for the release of a complete transcript of the *voir dire* proceedings, would appear to govern similar requests made under the FOIA. (*Id.*). In reaching this conclusion, the Court also recognized the District Court's ruling in *Application of Washington Post*, No. 92–301, 1992 WL 233354, at *4 (D.D.C.1992). In that case, the court conducted a First Amendment analysis and held that completed jury questionnaires must be provided to the media, with only "intensely personal information" redacted.[3]

While recognizing that juror questionnaires typically are subject to public inspection, this Court also noted that some of the information contained therein may be sufficiently private so as to outweigh the relevant public interest. Consequently, the Court determined that it "must have a more detailed understanding of the information contained in these questionnaires before it can determine which information may be properly withheld under Exemption 7(C)." (Doc. # 26 at 50). After reviewing the questionnaires, which have been provided by the Defendants under seal, the Court now concludes that the court-martial members' privacy interests outweigh the minimal public interest in the information sought to be disclosed.

### III. *Balancing of Interests*

As noted above, the FOIA and the First Amendment both operate to promote "public understanding of the operations or activities of the government, [to] open agency action to public scrutiny, [and to] allow citizens to be informed about what their government is up to." (Doc. # 26 at 49). Even though the FOIA and the First Amendment both foster an atmosphere of

---

**3.** Unlike the present case, the plaintiff in *Washington Post* invoked the First Amend-ment, rather than the FOIA, as the basis for its disclosure request.

governmental openness, the Court notes that the legal standards governing disclosure are not identical under the two provisions. As set forth above, the government may overcome the FOIA's presumption of openness (i.e., disclosure) by demonstrating the applicability of an exemption—here Exemption (7)(C), which requires a finding that the privacy interest in non-disclosure outweighs the public interest in disclosure. Under the First Amendment, however, the presumption of openness is even greater. It "may be overcome only by an overriding interest based upon findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press–Enterprise*, 464 U.S. at 510, 104 S.Ct. 819; *see also id.*, quoting *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606–607, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982) ("Where . . . the State attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest."). Thus, while the First Amendment and the FOIA both require a weighing of competing interests, the showing required to close judicial proceedings or records under the First Amendment is more substantial than the showing required to exempt information under the FOIA. Whereas the First Amendment provides the public with a constitutional right to access certain public information, the FOIA provides a broad sweeping, albeit lesser, statutory right to obtain information from government agencies. *Cf. McGehee v. Casey*, 718 F.2d 1137, 1147 (D.C.Cir.1983) ("As a general rule, citizens have no first amendment right of access to traditionally nonpublic government information. . . . A litigant seeking release of government information under FOIA, therefore, relies upon a statutory entitlement—as narrowed by statutory exceptions—and not upon his constitutional right to free expression.").

In the present case, the Plaintiffs may possess a First Amendment right to obtain some or all of the court-martial trial transcripts, exhibits, and *voir dire* questionnaires. *See United States v. Scott*, 48 M.J. 663, 665 (1998) (recognizing that the constitutional right of public access to criminal trials applies with equal validity to trials by court-martial); *see also id.* at 666 (noting that the qualified First Amendment right of access to materials entered into evidence may apply to exhibits that were presented in public at a trial conducted by court-martial). Nevertheless, the Plaintiffs have invoked the FOIA, rather than the First Amendment, as the basis for obtaining the court-martial members' questionnaires. As a result, the Court will apply the FOIA balancing-of-interests approach outlined above, rather than the constitutional strict-scrutiny analysis set forth in *Press–Enterprise* and *Washington Post*, to determine whether the questionnaires are subject to disclosure.

In its September 8, 1997, Decision and Entry, the Court noted that Counts Two and Five of the Plaintiffs' Complaint involved requests for the completed questionnaires. (Doc. # 38 at 16, 28). With respect to Count Two, the questionnaires concerned the court-martial of an individual identified as "Thomas." (*Id.* at 16). The *Vaughn* index previously submitted reveals that Defendant Navy has refused to disclose the following information from the questionnaires of the court-martial members in Thomas' case: (1) name; (2) rank or rate; (3) branch of service; (4) age; (5) date of rank; (6) total years of service, as officer and enlisted; (7) source of commission; (8) present duty station; (9) brief summary of career and past duty assignments; (10) nature of any law enforcement assignments; (11) marital status; and (12) age and sex of children. (*Id.* at 16–17). Defendant Navy also has withheld the court-martial members' answers to the following questions: (1) "Have you [or] any member of your family been the victim of any crime? If yes, describe briefly."; (2) "Have you ever served as a member of a court-martial? If yes, state how many times, the type of court-marital and the general nature of the case."; (3)

"Education: Are you a high school graduate? A college graduate? (If you are a college graduate, please state the name of the college, the degree attained and the date graduated)."; (4) "Do you hold a postgraduate degree? If yes, state the field and the degree held."; (5) "Have you ever attended a law school or taken any law school courses? If yes, state the school attended, courses taken and length of school."; (6) "Have you ever taken any courses in psychiatry or psychology? If yes, briefly describe the courses taken, and the school from which taken."; (7) "Please set forth what, if anything, you have heard about the subject matter of this case. If you personally know or are acquainted with the accused, please set forth the nature of your relationship with him . . . ." Finally, Defendant Navy withheld a statement informing the court-martial members that the case on which they would serve was *United States v. Thomas*. With respect to Count Five, Defendant Navy withheld information from court-martial members' questionnaires in the court-martials of individuals identified as "Williams," "Izzarone," "Acquittal IV," and "Rhodes." The information withheld is similar to, although not identical to, the information withheld from the court-martial members' questionnaires in Count Two.

■ Having reviewed each court-martial member's responses to the questionnaires, the Court concludes that the members possess at least a slight privacy interest in all of the information contained therein. Indeed, in its September 8, 1997, Decision and Entry, the Court found much of this *same information* exempt from disclosure under Exemption (7)(C), insofar as it related to court-martial witnesses and even the court-martial defendants themselves.[4] (*See, generally,* Doc. # 38). In so doing, the Court found limited or slight privacy

4. For example, the Court previously determined that the Defendant Navy properly withheld from disclosure certain personal data about an accused individual named "Thomas." This information included Thomas' age, marital status, and number of children. (Doc. # 38 at 13). The Court also concluded that Defendant Navy properly withheld, *inter alia*, Thomas' civilian and service-related educational records, service awards, spouse's name and address, children's names and dates of birth, social security numbers, parents' address, pay grade, branch of service, place of entry on active duty, last duty station, record of service time, name, component, mailing address, home of record, aptitude scores, and religious preference. (*Id.* at 13–14, citing *Vaughn* index at attachment B, 1–20). With respect to another accused individual identified as "Beebe," the Court approved the Defendants' decision to withhold information about his initial date of current service and term of current service. (*Id.* at 11). The Court also approved the redaction, from trial transcripts and witness statements, of information concerning various witnesses' cities of residence, race, date of birth, place of birth, height, weight, etc. (Doc. # 38 at 15, citing *Vaughn* index at attachment A, 2–4). Concerning a different court-martial, the Court approved the government's decision to withhold from various court-martial documents and a trial transcript the following information: name of accused's wife and child, number of years married, number of children, number of witness' children, names and ages of witness' children, and number of years witness has been in the military. (*Id.* at 23, citing *Vaughn* index attachment A, 4–6). The Court also approved the decision to withhold from disclosure another service member's home of record, date of birth, educational information, awards, social security number, spouse's name and address, and children's names. (*Id.* at 23, citing *Vaughn* index attachment B, 20–23). Similarly, the Court approved redactions from a trial transcript to conceal an accused's permanent duty station, date of birth, initial date of service, term of current service, basic pay, age, age upon entering the Navy, and educational level.

Although the foregoing examples are not exhaustive, they are representative of the types of information about witnesses and court-martial defendants that the Court already has found exempt from FOIA disclosure. Given that much of the foregoing information was contained in court-martial trial transcripts, exhibits, and witness statements, the information was presumptively discoverable under the FOIA. Nevertheless, the Court reasoned (1) that the information implicated at least a slight privacy interest, and (2) that no discernable public interest existed to outweigh that privacy interest. Consequently, the Court found the information exempt from disclosure. As the Court explained in its prior ruling, the court-martial questionnaires also are presumptively subject to disclosure un-

interests in the information at issue and no discernible public interest, within the meaning of the FOIA, in the release of the information. Consequently, after weighing these competing interests, the Court found the information exempt from disclosure.

As with the information provided by the court-martial witnesses and defendants, the court-martial members' completed questionnaires are presumably subject to disclosure under the FOIA, unless the Defendants can establish the applicability a FOIA exemption. After reviewing the questionnaire responses, however, the Court discerns no basis for imposing *more stringent* disclosure requirements on the questionnaires than the aforementioned FOIA "balancing" test that the Court previously applied to the same or similar information provided by court-martial witnesses and defendants. Given that the Court has found no legitimate public interest in the disclosure of the information, as it relates to witnesses and court-martial defendants, the Court likewise finds no pubic interest in the disclosure of the questionnaire responses.

After reviewing the questionnaires, the Court simply cannot conceive of any reason why they should receive *less* protection under the FOIA than the witness statements, trial transcripts, and exhibits previ-

der the FOIA. Nevertheless, the Court discerns no reason why they should receive *less* protection from disclosure than the other portions of the court-martial record, including witness statements and trial transcripts, which contain largely the same information about various defendants and third-party witnesses.

5. In reaching this conclusion, the Court departs from *dicta* that it expressed in two prior rulings in this matter. In those rulings, the Court suggested that *Application of Washington Post*, No. 92–301, 1992 WL 233354 (D.D.C.1992), would govern the disclosure of the court-martial questionnaires. Upon further reflection, the Court now concludes that *Application of Washington Post* is distinguishable. In *Washington Post*, the District Court determined that the plaintiff newspaper possessed a First Amendment right to obtain copies of *voir dire* questionnaires that had been completed by prospective jurors. In so ruling, the court recognized that the public

ously found exempt from disclosure under Exemption 7(C). In short, for the same reasons that the Court previously approved the withholding of personal information about court-martial witnesses and defendants, the Court now concludes that the court-martial members' questionnaire responses were properly withheld under Exemption (7)(C). After reviewing each of the questionnaires, the Court has determined that the information contained therein sheds no light on the workings of the government. As the Supreme Court has made clear, the objective of the FOIA is "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Rose*, 425 U.S. at 361, 96 S.Ct. 1592. In the present case, disclosure of the questionnaire responses would not advance that important public interest. Absent an identifiable public interest supporting the release of the personal questionnaire responses, the Court concludes that court-martial members' slight privacy interests prevail and justify the Defendants' decision to withhold the information, pursuant to FOIA Exemption (7)(C).[5]

IV. *Conclusion*

■ For the reasons set forth more fully above, the Court hereby SUSTAINS the

possesses a qualified right of access to criminal trials, including *voir dire* proceedings. The court then applied a strict-scrutiny test, noting that "[t]he public's right of access may be denied if the denial is 'necessitated by a compelling government interest, and is narrowly tailored to serve that interest.'" *Id.* at *2. Applying that standard, the court found the questionnaires subject to public release, with appropriate redactions of "intensely personal information." *Id.* at *4.

In the present case, however, the Court has applied the "balancing-of-interests" approach mandated by applicable FOIA case law, rather than the strict-scrutiny test required under a First Amendment analysis. Under the FOIA balancing test set forth, *supra*, the Court has determined that the privacy interests implicated by the court-martial members' questionnaire responses outweigh the virtually nonexistent public interest in disclosure of the responses. Because the present case, unlike *Washington Post*, involves a FOIA request,

Defendants' Renewed Motion for Summary Judgment (Doc. # 36), insofar as it relates to the court-martial members' questionnaires. The questionnaires, which relate to Counts Two and Five of the Plaintiffs' Complaint, are exempt from disclosure under FOIA Exemption (7)(C).[6]

Given that no claims remain viable in this action, this Decision and Entry *is* a final, appealable order.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

---

rather than the First Amendment, the Court need not engage in strict-scrutiny review.

**6.** In addition to finding the court-martial members' questionnaires exempt from disclosure under Exemption 7(C), the Court also notes that the questionnaires are exempt from disclosure under 5 U.S.C. § 552(b)(6). The Defendants previously raised Exemption (b)(6) as a basis for non-disclosure, (Doc. # 18, at 6 n. 2), and the Court discussed Exemption (b)(6) at length in its prior rulings. As the Court previously explained, Exemption (b)(6) shelters from FOIA's reach "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]" (Doc. # 26 at 25). The phrase "similar files" has been broadly construed to include any government records that contain personal, identifying information. *Schell v. U.S. Dept. of Health & Human Services*, 843 F.2d 933, 937 (6th Cir.1988); *Abraham & Rose v. United States*, 138 F.3d 1075, 1083, (6th Cir.1998). In its prior ruling, the Court also recognized that Exemption (b)(6) is quite similar to Exemption 7(C), except that the two Exemptions "differ in the magnitude of the public interest that is required to override the respective privacy interests protected by the exemptions." (*Id.*). "[W]hereas, Exemption 7(C) protects any information which 'could reasonably be expected to constitute an unwarranted invasion of personal privacy,' Exemption 6 requires the government to make a more stringent showing that such an invasion is 'clearly unwarranted' before nondisclosure is justified." (*Id.* at 25–26). Under both Exemptions, however, the Court must engage in the same process of identifying the private interest, identifying the public interest, and then balancing the interests to determine whether disclosure is warranted. (*Id.* at 26).

In the present case, the Court has determined that the public interest implicated by the court-martial members' questionnaires is non-existent or virtually non-existent. The Court also has determined that the court-martial members possess at least some privacy interest in the questionnaire information. Given these circumstances, the Court concludes that disclosure of the information would result in a "clearly unwarranted" invasion of privacy under Exemption (b)(6). *Cf. Abraham & Rose*, 138 F.3d at 1083 (applying Exemption (b)(6) and recognizing that "a clear privacy interest exists with respect to such information as names, addresses, and other identifying information even if such information is already available on publicly recorded filings"); *Norwood v. Federal Aviation Administration*, 993 F.2d 570, 574 (6th Cir. 1993) ("Unquestionably, then, disclosure of plaintiff's category of 'identifying information' would serve no public interest and therefore would constitute a 'clearly unwarranted invasion of [the controllers'] privacy'"); *Schell*, 843 F.2d at 938 (applying Exemption (b)(6) and recognizing that "[t]he central inquiry is whether public access to the information ... is tantamount to an invasion of privacy; if so, we ask whether such an invasion is justified by any countervailing public benefit from disclosure") (quoting *Madeira Nursing Center, Inc. v. N.L.R.B.*, 615 F.2d 728, 730 (6th Cir. 1980)).