**DAYTON NEWSPAPERS, INC., et al., Plaintiffs,**

**v.**

**DEPARTMENT OF VETERAN AFFAIRS, Defendant.**

**No. C–3–00–235.**

United States District Court, S.D. Ohio, Western Division.

Jan. 23, 2003.

990

Robert Perry Bartlett, Jr., David Philip Pierce, Coolidge Wall Womsley & Lombard, Christopher R. Conard, Dayton, OH, for Plaintiffs.

Gregory Gordon Lockhart, Dayton, OH, for Defendant.

EXPANDED OPINION; DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (DOC. # 11); OVERRULING DEFENDANT'S MOTION TO DISMISS (DOC. # 17–1) AND SUSTAINING IN PART AND OVERRULING IN PART DEFENDANT'S ALTERNATIVE MOTION FOR SUMMARY JUDGMENT (DOC. # 17–2); DEFENDANT GIVEN 60 DAYS TO SUBMIT A VAUGHN INDEX ON PURPORTED PRIVILEGED INFORMATION TO WHICH PLAINTIFFS MAY RESPOND PURSUANT TO S.D. OHIO CIV. R. 7.2(a)(2)

RICE, Chief Judge.

The matter before the Court concerns the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. In their Complaint (Doc. # 1), Plaintiffs Dayton Newspapers, Inc. ("DNI"), and Russell Carollo ask the Court to order Defendant United States Department of Veterans Affairs ("VA") to release certain information related to tort claims filed against the VA between the years of 1985 and 1995. Carollo, within the scope of his employment as a reporter for DNI's Dayton Daily News, had previously submitted an FOIA request to the VA for such information. Pending before the Court is Plaintiffs' Motion for Summary Judgment (Doc. # 11) and Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. # 17–1), or, in the Alternative, for Summary Judgment (Doc. # 17–2)(filed *nunc pro tunc*).[1]

## I. *Factual Background* [2]

### A. *Carollo's FOIA Request*

Plaintiff Carollo is a reporter for the Dayton Daily News (First Carollo Aff., Doc. # 11 at Ex. 1, ¶ 2), a newspaper published by Plaintiff DNI. On February 16, 1995, pursuant to the FOIA, and acting in his capacity as a journalist, Carollo submitted a written request to the VA's Office of General Counsel ("OGC") for "access to and copies of the Tort Claims database and/or a database of similar name and/or all computer records of legal claims for the past 10 years." (Doc. # 1 at Ex. 1.) He resubmitted his request on March 13, 1995, clarifying that he would accept the information "in a variety of deliminated computer forms," as acceptable to the VA. (Plaintiffs' Reply and Memorandum Contra (Doc. # 15) at Ex. 9.)

---

1. The Court issued its abbreviated Opinion on this matter on September 26, 2001 (Doc. # 18).

2. Ordinarily, for purposes of ruling on summary judgment motions, the Court would construe the facts, and all reasonable inferences drawn therefrom, in a light most favorable to the non-moving party. In this case, however, the material facts are not in dispute, and the questions at issue are purely ones of law.

Although he only discovered the name of it at a later point in time, the VA "database" to which Carollo referred in his request letter is known as the Tort Claims Information System, or TCIS. (First Carollo Aff. ¶ 6; Hunter Decl., Doc.1 # 7 at Ex. B, ¶ 1.) Prior to his 1995 request, Carollo had attempted to retrieve the same TCIS information in his capacity as a employee of the The News Tribune, in Tacoma, Washington, in 1993. (Second Carollo Aff., Doc. # 15 at Ex. 5, ¶ 1.)

### B. VA's Database System—TCIS

In addition to the OGC, the VA maintains twenty-three Offices of Regional Counsel ("regional counsel" or "regional offices") around the country. (Richman Decl., Doc. # 17 at Ex. A, ¶ 3.) Tort claims filed against the VA are considered in the first instance by the appropriate regional counsel. (Id. ¶ 4.) Prior to the development of the TCIS, regional offices maintained pertinent tort claim data under their own systems, and submitted reports on the relevant data to the OGC on a quarterly basis. (Id. ¶ 11.) The TCIS was developed through the combined efforts of the OGC and the Veterans Health Administration ("VHA"),[3] with several goals in mind, including the ability to maintain a uniform VA tort claims tracking system across the country, and the establishment of a means for the VHA to track malpractice claims at its various medical facilities and hospitals. (Id. ¶ 12.)

The central TCIS database, maintained at the OGC, retrieves certain information off of the regional TCIS databases on a nightly basis. (Hunter Decl. ¶ 3.) A tort claim against the VA is initiated when the claimant completes and submits the VA's standardized claim form: Standard Form 95, or SF95. (Richman Decl. ¶ 4 & attach-

ment A.A.) Once the SF95 is forwarded to the appropriate regional office, the information provided on the SF95 is entered into the TCIS. (Id. ¶ 15.) As necessary, the regional counsel may request additional information to supplement that which is contained on the SF95. (Id.) As a result, the TCIS database contains data fields which are occupied by information other than that culled from the SF95. (Id.) Importantly, not all of the TCIS data fields which may be occupied by data at the regional level are collated into the central TCIS database at the OGC. (Id. ¶ 4.) The entire set of potentially occupiable data fields on the central database is set forth in what the VA calls the TCIS Global Map Data Dictionary ("GMDD"). (Id. ¶ 3 & attachment B.B.) The VA provided Carollo with a printout of the GMDD. Based on his interpretation of the document, Carollo contends that there are 119 data fields in the TCIS database. (First Carollo Aff. ¶ 8.) However, the VA states that while there may be over 100 potential data fields, the OGC's central database collects information from, at most, only thirty-three of those fields during its nightly sweep of the regionally-maintained databases. (Hunter Decl. ¶ 3 & attachment B.A.) Finally, the TCIS is also programmed to accept additional data fields as created and maintained at the regional offices, which are not maintained on the central database at the OGC. (Id. ¶ 5.)

The significance of the facts just presented can be summarized as follows: the central TCIS database maintained at the OGC does not contain all of the information related to every tort claim filed against the VA. First, the central database only collects information concerning, at most, thirty-three of the TCIS data fields.

---

**3.** The VHA is the branch of the VA that provides medical care for, and treatment to, vet-

erans. See 42 U.S.C. § 7301.

(*Id.* ¶ 3.) *Second,* regional offices have the capability to create additional data fields that are not even recognized on the GMDD and over which the OGC maintains no control. (*Id.* ¶ 5.)

## C. *The Dispute Between Carollo and the VA*

The VA did not respond to Carollo's request as adequately as he had hoped. In separate responses to his respective FOIA requests, the VA informed Carollo that if he wanted the requested information in a digital format, it could only supply such in a format compatible with the rather esoteric programming language in which the TCIS program was written, one which Carollo likely could not not procure unless he were willing to undertake a significant expense. (Doc. # 1 at Ex. 2, at 2; Dodson Decl., Doc. # 17 at Ex. C, attachment C.3, at 1.) In its response to his February 16, 1995, request, the VA informed Carollo that it could not, itself, convert its information into a digital format agreeable to him without assuming its own great expense, but that, alternatively, it could provide him with paper records at a cost of $1,372.20. (Doc. # 1 at Ex. 2.) In its response to his March 13, 1995, request, the VA actually sent Carollo a redacted copy of the records he sought in the digital format it had mentioned it could provide. (Dodson Decl., attachment C.3.) Construing both responses as rejections of his respective FOIA requests, Carollo filed administrative appeals as to both, the first filed on March 18, 1995 (Doc. 1 at Ex. 3),[4] and the second on July 21, 1995 (Doc. # 15 at Ex. 10.) His appeals, presumably consolidated, were denied on December 14, 1995. (Doc. # 1 at Ex. 4.)

The VA stated four reasons for the denial of his appeal(s), the first three related to the substance of his FOIA request, and the fourth related to the format in which he requested the information be provided. *First,* the VA asserted its right to withhold certain names pursuant to 5 U.S.C. § 552(b)(3) ("Exemption 3"). (Doc. # 1 at Ex. 4.) Exemption 3 provides that agency information is exempted from mandatory disclosure if another federal law prohibits its disclosure. Thereunder, the VA invokes 38 U.S.C. § 5701(a) and 38 U.S.C. § 7332 for protection from disclosure. 38 U.S.C. § 5701(a) prohibits the disclosure of the names of former or current members of the Armed Forces and their dependents. 38 U.S.C. § 7332 prohibits disclosure of VA patient records concerning any form of treatment for drug or alcohol use or abuse, sickle cell anemia, or HIV.[5] *Second,* the VA asserted its right to withhold certain names and other identifying information pursuant to 5 U.S.C. § 552(b)(6) ("Exemption 6"), which exempts the disclosure of "personnel and medical and similar files" where such disclosure would constitute an unwarranted invasion of privacy. (*Id.*) *Third,* the VA asserted its right to withhold certain information pursuant to 5 U.S.C. § 552(b)(5) ("Exemption 5"), which generally exempts the disclosure of certain agency letters and memoranda that would ordinarily be privileged under the Federal Rules of Evidence. (*Id.*) *Finally,* the VA informed Carollo that it had no legal obligation to provide any of the information he had requested in the format he had requested, and that it would not do so unless it could compile said information in two person-hours or fewer. (*Id.*)

The latter issue was apparently resolved, as, subsequent to the denial of his

---

4. Carollo's appeal of March 18, 1995 is actually dated March 18, *1994,* but it is clear from the record that *1995* is the correct year in which it was written and submitted.

5. The VA's reliance on § 7332 appears to be a *post hoc* position, as no mention of its relevance was made to Carollo prior to this litigation.

appeal, on April 11, 1996, the VA provided Carollo with certain TCIS information in a readable format. (Dodson Decl., attachment C.6.) Nevertheless, because certain information had been redacted, Carollo pursued his objections to the redactions (Doc. # 15 at Ex. 11; Dodson Decl., attachment C.7),[6] and the VA again responded that said redactions were necessary for privacy and privilege reasons. (Dodson Decl., attachment C.8.)

### D. *The Specific Information at Issue*

The issue of format aside, Carollo states that the VA agreed from the outset to provide to him information contained in several data fields, including that regarding the following: (1) case status; (2) date of case status; (3) the relationship of the claimant to the allegedly injured party; (4) the amount claimed; (5) the fiscal year the claim was opened; (6) and the name of the treating VA medical facility. (Doc. # 1 at Ex. 5.) The VA submits that it has subsequently provided to Carollo information from many additional data fields, including the following: (1) the general and special hospital medical services provided to its patients; (2) the description of the alleged negligence, to the extent the description does not reveal privileged information; (3) the injury resulting from the alleged tort and its severity; (4) the date of injury; (5) the respective dates that the tort claim and lawsuit, if applicable, were filed; (6) the amount paid on the claim; (7) the existence of a spouse; (8) the existence of children and their number; (9) the hospital code for the alleged negligence (i.e., a generic, coded description of the injury-causing event); and (10) the name of the court in which any suit was filed. (Meadows Decl., Doc. # 17 at Ex. F, ¶ 6.) The fact that the VA has made subsequent disclosures is not contested by Carollo. Therefore, the Court will focus its attention on the information that the VA continues to withhold (from the following TCIS data fields): (1) name of patient; (2) name of injured person; (3) date of birth of surviving spouse, if applicable; (4) name of claimant;[7] (5) name of additional claimant; (6) description of alleged negligence, to the extent the description contains the names or other identifying information of claimants, injured persons, etc.; (7) name of potential third-party defendant; (8) name of presiding judge, if applicable;[8] (9) name of claimant's or plaintiff's attorney; (10) name of attorney's law firm; (11) social security number of patient; (12) case status, to the extent it contains remarks that are considered privileged; (13) date of birth of patient; (14) phone number of regional counsel. (*Id.* ¶ 5.) More recently, the VA has stated that it will also provide the phone number of the applicable regional counsel offices if Carollo so desires. (Doc. # 17 at 13, n. 1.)[9]

---

**6.** Carollo's letter to the VA objecting to its redactions is dated April 16, *1995*, but it is clear from the record that the letter was actually written on April 16, *1996*.

**7.** The "patient," "injured party," and "claimant," may all be the same person, or may be three separate persons. If a lawsuit was filed, a fourth category, "plaintiff," would be added to the mix. In any event, from the context of the parties' memoranda, the Court understands the "injured party" to always mean the alleged tort victim.

**8.** The Court is perplexed by this particular withholding, as it seems inconsistent with its release of the name of the court in which the suit was brought. The Court will discuss this concern *infra*.

**9.** Officially, "Doc. # 17" in the Court's docket file is Defendant's Motion; its Memorandum in Support, paginated separately, is attached thereto. For purposes of this Decision and Order, parties should be aware that in referring to a page number in Doc. # 17, the Court is referring to Defendant's attached Memorandum, and not to the Motion itself, which is but a single page.

To further hone its focus, the Court notes that Carollo is not interested in the following information: (1) patient's name; (2) claimant's name; (3) additional claimant's claim; (4) patient's, claimant's or additional claimant's street name; (5) potential third-party defendant's name; (6) potential third-party defendant's street name; (7) patient's social security number. (Doc. #15 at 7.) As well, Carollo requests the name of the injured party only to the extent that party has died or his or her name was put into the public domain by the filing of a lawsuit. (*Id.*) Thus, the only information that Carollo seeks that the VA has continued to refuse to disclose is the following:[10] (1) name of injured person if that person is deceased or if that person filed suit or had a suit filed on his or her behalf; (2) date of birth of the surviving spouse, as applicable; (3) yet undisclosed portions of the description of alleged negligence; (4) name of presiding judge; (5) name of claimant's attorney and law firm; (6) remarks pertaining to a claim's (or case's) status; (7) date of birth of patient; (8) city, state and zip code of claimant, and any other information contained in any of the other TCIS GMDD data fields.[11]

Throughout its memoranda submitted to the Court on this matter, the VA continues to maintain that the information in dispute should not be disclosed, lest it jeopardize the privacy interests of patients, claimants, and past or former members of the Armed Forces, and the confidential work product of its own counsel. In furtherance of its argument that the disputed information is protected, it invokes Exemptions 3, 5, and 6, and 38 U.S.C. §§ 5701 and 7332 for support. It is the VA's argument that any of the information in dispute that is being withheld for privacy reasons, if disclosed, might allow Carollo to piece together the identity of the injured parties or claimants, thus defeating the purpose of withholding names of such parties in the first instance. In addition to the privacy and confidentiality concerns, because the OGC purportedly does not maintain data fields for the city, state and zip code of a claimant, or for any other category of information that is not included on the TCIS Data Collection Form, it contends that Carollo could not possibly have requested such information from it. To that end, and to the extent Carollo is now seeking the city, state and zip code of each claimant, the VA argues that Carollo's claim should be barred for failure to exhaust his remedies with the appropriate branch of the VA (i.e., with the regional offices, which may maintain city, state and zip code information). Furthermore, the VA contends that were it obligated to make disclosures of such informa-

---

**10.** Carollo does not suggest that the VA has provided none of the information which it stated it would.

**11.** This final category highlights a serious point of miscommunication between the parties. The parties' references to data fields in their respective briefs are somewhat confusing in that they use two distinct reference points. Carollo's references are to the data fields contained in the GMDD, a copy of which is attached to the Hunter Declaration. (Doc. #17 at Ex. B, attachment B.B.) Exhibit 5 of the Complaint is Carollo's own list of the 119 data fields that he believes are contained in the TCIS. In this list, Carollo indicates those six data fields for which the VA provided information, and those 113 fields for which it did not. He created this list based on his interpretation of the GMDD sent to him by the VA. (*See* Doc. #15 at Ex. 11.)

On the other hand, the VA refers to data fields as contained in the TCIS Data Collection Form, a copy of which is also attached to the Hunter Declaration. (Doc. #17 at Ex. B, attachment B.A.) The Data Collection Form contains what the VA purports to be are the thirty-three data fields maintained on the central TCIS database by the OGC. If the information is not included in one of these thirty-three fields, the VA maintains that the OGC does not have direct access to such.

tion, it would entail the laborious process of writing a new computer program enabling the OGC's central TCIS database to search for and integrate data from the various, non-uniform regional counsel databases, an exercise that it considers unduly burdensome. Finally, with respect to Carollo's request for the names of injured persons who have either died or have filed lawsuits, or have had lawsuits filed by others on their behalf, the VA argues that neither death nor the filing of a lawsuit divests it of its obligation to maintain the private and confidential aspects of its tort claims records.

For his part, Carollo argues that the VA's statutory defenses lack merit. He argues that Exemption 3 and 38 U.S.C. §§ 5701 and 7332 are inapplicable, and that Exemption 6 is an inappropriate defense because the information in dispute does not implicate any privacy concerns. To the extent the VA refuses to disclose information on the ground of privilege, pursuant to Exemption 5, Carollo argues that without knowing the specifics of what that information is, it is impossible for him to respond. To the extent the VA argues that Carollo requested information not within its control, he argues that the VA never informed him that it did not maintain a central database on every data field enumerated in the GMDD, and that it should not be entitled to claim such a defense at this juncture, and that, in any event, it would not be unduly burdensome for the VA to provide him with the city, state and zip code information he seeks.

## II. *Analysis*

The Court finds that there are no genuine issues of material fact. There are, however, some evidentiary gaps in the record that preclude disposition of at least one issue at this time. The Court will address this concern as it arises in its discussion of the merits of the case. The Court will discuss the dismissal component of Defendant's Motion, and then discuss the parties' respective Motions for Summary Judgment.

As an initial matter, the Court feels obliged to address briefly an issue that is not material, but which for some reason garnered much discussion from the parties in their respective briefs, to wit, the issue concerning the digital format in which the VA provided certain information to Carollo. As noted above, whatever dispute may have existed at one time as to the format in which the VA is able to provide information from the TCIS, that dispute has been resolved, and it is evident that the VA is capable of providing such information in a format agreeable to Carollo. If the VA's initial intransigence on this matter caused Carollo undue delay or hardship, such has not been brought to the Court's attention. In any event, any issue that may have existed with respect to this dispute is now moot.[12]

### A. *Motion to Dismiss (Pursuant to Fed.R.Civ.P. 12(b)(1))*

■ As noted, part of what Carollo seeks from the VA are the records of the cities, states and zip codes of all claimants

---

**12.** Interestingly, Congress addressed this very issue in its 1996 amendments to the FOIA, adding to § 552(a)(3) several subparagraphs, including subparagraph "(B)," which reads:

In making any record available to a person under this paragraph, an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form

or format. Each agency shall make reasonable efforts to maintain its records in forms or formats that are reproducible for purposes of this section.

5 U.S.C.A. § 552(a)(3)(B)(West Supp.2001). Of course, it is unnecessary now to analyze any impact this amendment would have on the parties' former disagreement on this issue.

who have filed tort claims against the VA. The VA has adduced evidence, unrefuted by Carollo, that it does not directly maintain information on such. The VA has demonstrated that the central TCIS database maintained at the OGC contains a limited number of data fields, and that additional information, including city, state and zip code, is maintained only at the regional offices. The VA argues at length that the OGC reasonably interpreted Carollo's FOIA request as one only for information that the OGC itself maintained in the centralized TCIS database. The VA further contends that Carollo was an "experienced FOIA requester" who had submitted FOIA requests to the VA in the past. (Defendant's Response (Doc. # 14) at 3.) Therefore, the VA argues, because Carollo must have known the limitations of the centralized TCIS database, and because the OGC reasonably construed Carollo's request as one limited to information within the direct control of the OGC, Carollo's claim with respect to information not directly maintained by the OGC must be denied on the basis that Carollo did not exhaust his administrative remedies with the appropriate branch of the VA, *viz.*, the regional offices, and that the Court therefore lacks jurisdiction. *See* Fed.R.Civ.P. 12(b)(1).

It is incorrect to say that Carollo's request was only so broad in scope as to extend to that information in the direct control of the OGC. While the Court finds that it is true that Carollo submitted his request to the wrong agency office, that fact is irrelevant to the VA's exhaustion defense. Likewise, the reasonableness of the VA's interpretation of the breadth of Carollo's request is irrelevant. From an objective point of view, it is clear that Carollo submitted, in essence, a "give me all that you have" FOIA request. His written requests of February 16, and March 13, 1995, make it plain that he wanted "access to and copies of the Tort Claims database and/or a database of similar name *and/or all computer records of legal claims for the past 10 years."* (Doc. # 1 at Ex. 1; Doc. # 15 at Ex. 9.) (Emphasis added.)

The VA argues that Carollo's subsequent actions, or inactions, *viz.*, never making it expressly clear that he wanted not only information which the OGC maintained, but also information which the regional counsel maintained, essentially estop Carollo from now claiming he was seeking more information all along. However, nothing in the record demonstrates that Carollo knew or had any reason to know that the tort claims records maintained at the OGC were not complete, and that certain other information, namely the city, state and zip code of claimants, was maintained at the regional offices. The OGC certainly never informed Carollo of this fact. Indeed, much of this dispute has been exacerbated by a lack of communication between the parties. On the one hand, there is Carollo's sweeping request for all agency records concerning tort claims, devoid of any specificity or statement of purpose other than that it was made in his capacity as a journalist. On the other hand, there is the rather cumbersome response from the VA, in which it provided an enumeration of the various data fields the TCIS recognized, but failed to inform Carollo that certain information was maintained exclusively at the regional offices.

In any event, the consequence of Carollo's failure to address his FOIA request to the proper VA department is not part and parcel to a finding that he failed to exhaust his administrative remedies, but, rather, goes to the merits of the OGC's denial of his request to disclose the city, state and zip code of claimants. Accordingly, Defendant's Motion to Dismiss pursuant to Fed. R.Civ.P. 12(b)(1) is OVERRULED.

### B. *Motions for Summary Judgment*

#### 1. *Standards Governing Motions for Summary Judgment*

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(quoting Fed.R.Civ.P. 56(e)).

#### 2. *Freedom of Information Act*

 Relevant to the matter before the Court, at the time Carollo submitted his written request, the FOIA required that "each [federal] agency, upon any request for records which (A) reasonably describes such records and (B) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3).[13] "The Freedom of Information Act was enacted to facilitate public access to Government documents."

*United States Dept. of State v. Ray,* 502 U.S. 164, 173, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991) (citing *John Doe Agency v. John Doe Corp.,* 493 U.S. 146, 151, 110 S.Ct. 471, 107 L.Ed.2d 462 (1989)). "The statute was designed "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." " *Id.* (quoting *Dept. of Air Force v. Rose,* 425 U.S. 352, 361, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976)). At its core, the FOIA provides for public access to information that will "contribute significantly to public understanding of the operations or activities of the government." 5 U.S.C. § 552(a)(4)(A)(iii); *see also United States Dept. of Justice v. Reporters Committee,* 489 U.S. 749, 775, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). "[T]he strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents." *Ray, supra* (citing *Rose,* 425 U.S. at 361, 96 S.Ct. 1592, and *Reporters Committee,* 489 U.S. at 755, 109 S.Ct. 1468). The agency's burden is the same whether it withholds a document in part or in full. *See id.* Ordinarily, the agency may justify its claims of exemption through detailed affidavits, which are entitled to a presumption of good faith. *See Jones v. F.B.I.,* 41 F.3d 238, 242 (6th Cir.1994)(citing *Ray, supra* at 179, 112 S.Ct. 541).

#### 3. *Exemptions from FOIA disclosure*

As noted, the general rule is that agency records should be disclosed upon receipt of a proper FOIA request. However, within the FOIA, there is an enumerated list of nine categories of documents that are exempted from the general rule of mandatory disclosure. The VA has invoked three of those nine exemptions, which the Court

---

**13.** In its 1996 amendments, Congress amended § 552(a)(3) so that the text quoted herein was re-designated as subparagraph "(A)" and former subparagraphs "(A)" and "(B)," as printed above, were re-designated as clauses "(i)" and "(ii)." *See* 5 U.S.C.A. § 552(a)(3) (West Supp.2001).

shall briefly summarize. Exemption 3 exempts from disclosure information that is barred from disclosure by some other federal statute, where that other statute gives no discretion to the agency on the issue or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). With respect to Exemption 3, the VA invokes two statutes as its "other statutes." First, it invokes 38 U.S.C. § 5701(a), which generally bars the disclosure of names and addresses of present or former members of the Armed Forces. Second, it invokes 38 U.S.C. § 7332, which generally bars the disclosure of medical records for VHA patients treated in any manner for drug or alcohol use or abuse, HIV infection, or sickle cell anemia.

Exemption 5 exempts from disclosure agency memoranda or other correspondence "which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 5 has been construed to preserve certain evidentiary privileges and related doctrines, including the attorney-client privilege, the attorney work-product doctrine and the deliberative process doctrine. *See Schell v. United States Dept. of Health and Human Servs.*, 843 F.2d 933, 939 (6th Cir.1988). It is the VA's position that certain notations in the TCIS records were redacted in furtherance of their privileged status. (Doc. # 17 at 25.)

▮ Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). One's privacy is invaded whenever the disclosure of information could lead to embarrassment, humiliation or danger. *See Kiraly v. F.B.I.*, 728 F.2d 273, 277 (6th Cir. 1984). The "similar files" language has been given an expansive interpretation by the Supreme Court so that the exemption applies to any information in any file related to a particular individual where that information's release would constitute a clearly unwarranted invasion of that person's privacy. *United States Dept. of State v. Washington Post Co.*, 456 U.S. 595, 602, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982). In this regard, the scope of Exemption 6 is not restricted by a file's label, but, rather, extends to private information concerning a particular individual within any given file, the disclosure of which would directly identify the individual. *Id.; see also Abraham & Rose v. United States*, 138 F.3d 1075, 1083 (6th Cir.1998). To the extent the TCIS records contain personal, private information, the VA contends that the records are "similar files" and can be redacted as necessary pursuant to Exemption 6.

### 4. *Discussion*

The Court shall examine each disputed category of information individually in light of the general rules of the FOIA, and its exemptions, as set forth above. The Court notes that with regard to the majority of the requested information in dispute, it may make category-by-category decisions on whether the information contained therein may be withheld by the VA. *See Reporters Committee*, 489 U.S. at 776, 109 S.Ct. 1468; *Vaughn v. United States*, 936 F.2d 862, 868 (6th Cir.1991). However, a categorical decision may not be made with regard to the information redacted pursuant to the claim of privilege and Exemption 5, as a determination on that issue requires a supplement to the record, as will be discussed below.

### a. *city, state and zip code of claimants*

▮ As noted above in the Court's discussion of Defendant's Motion to Dismiss, the VA has adduced unrefuted evidence

that the OGC does not maintain records on claimants' city, state and zip code. Additionally, it is not contested that the OGC was the sole department within the VA to which Carollo submitted his written FOIA requests. The Court need not explore the question of whether a claimant's city, state or zip code is private information and exempt from FOIA disclosure because, in this case, it is enough to observe that Carollo did not submit his FOIA request to the correct VA office.

Carollo argues that he was never informed by the OGC that it did not maintain complete records on every last detail of information collected by the VA from a tort claimant. (Second Carollo Aff. ¶ 19.) Therefore, he submits, the VA should not now be allowed to say that it is not capable of providing this information. The Court finds this argument no more persuasive than the VA's own argument, discussed above in relation to its Motion to Dismiss, that Carollo should be barred from seeking this information (pursuant to exhaustion principles) because he did not specifically mention that he was seeking information not maintained in the centralized TCIS database.

Even if it were to assume *arguendo* that a claimant's city, state or zip code is not information protected by a privacy interest, the Court would see absolutely no need to take the drastic measure of ordering the OGC to create a comprehensive database integrating every last data field from each of the twenty-three regional counsel offices. The FOIA requires that each federal agency publish rules adequately describing to the public the place from which, and the manner in which, the public may obtain information within the control of the agency. *See* 5 U.S.C. § 552(a)(1)(A) & (a)(3). Pursuant thereto, the VA has published its rule that a FOIA request for information should be submitted to the "office having jurisdiction of the

record desired." 38 CFR § 1.553. In the event the requester is not certain of which office maintains the records she seeks, she may submit her request to the Central Office in Washington, D.C. *Id.* The Court takes notice that the VA Central Office is located at the same address as that of the OGC, and the Court finds it fair to say that Carollo's request, submitted to the OGC, was one to the Central Office. Although the parties do not address this issue, the Court believes a common sense understanding of this rule reveals that when a request to the Central Office is made, the Central Office will either provide the information itself, if it can, or direct the party to the appropriate office, if it cannot.

In this instance, the unrefuted facts show that the offices with jurisdiction over the city, state and zip code information are the regional offices. Ideally, Carollo's request would have been specific, and the OGC could have disclosed what it could and directed Carollo to the regional counsel for what it could not. Then again, absent keen knowledge of what information was in the OGC's possession, Carollo could hardly have been expected to make anything but a general request for "all" relevant information. However, just as the OGC's reasonableness in interpreting Carollo's request is irrelevant to the VA's exhaustion defense, Carollo's reasonableness in making a general request is irrelevant to this Court's finding that the OGC is not the office with jurisdiction over the information sought. Carollo's request must be made to the individual offices. The fact that the OGC failed to notify Carollo of this does not necessitate ordering the OGC now to collect and disclose the information. Because the OGC does not maintain the records Carollo seeks, it did not violate the FOIA in refusing to disclose the cities, states and zip codes of tort claimants. The same is true with

respect to information contained in any other data fields not maintained by the OGC. On this issue, the VA's Motion for Summary Judgment is SUSTAINED and Carollo's OVERRULED.

### b. *names of attorneys and law firms*

■ Invoking the protections of Exemption 6, the VA submits that the release of a tort claimant's attorney's name and the name of the attorney's law firm [14] would lead to the identification of a tort claimant's identity, and thus defeat the purpose of withholding the claimant's name in the first instance. The VA arrives at this position by observing that "because the federal district courts have computerized systems, their computers would be able to pull up a particular case" when certain search terms, names of attorneys in particular, are plugged into the search engine by users such as Carollo. (Doc. # 17 at 36; Doc. # 14 at 11–12.) This argument is unpersuasive.

The VA does not contend that it owes a duty of protecting the privacy of the attorneys or law firms themselves in their capacities as agents for the claimants, an argument the Court would find untenable. It also acknowledges that the revelation of an attorney's name in and of itself likely would not lead to the discovery of individual claimants. (Doc. # 17 at 35.) In addition, it acknowledges that the filing of a lawsuit is an affirmative act by a claimant of placing his name, and the names of others involved, in the public domain. (*Id.*) The VA's argument, simply, is that

the public nature of a lawsuit would, under conventional norms, merely make certain identifying information available in the vast universe of public filings, but would by no means direct a researcher, who is otherwise unaware of any particular information, to a specific party. The knowledge of a plaintiff's attorney's name, on the other hand, coupled with the sophistication of contemporary database search engines, would direct a researcher to specific names in a way that the mere availability of information in the abstract would not. [15]

The VA's argument fails for several reasons. *First*, it fails to address why the names of those attorneys for claimants who did not file suits in courts of law (and who, therefore, could not be located in a court database) should not be disclosed. *Second*, it offers no evidence to support its assertion that the revelation of an attorney's name will lead to the identification of a claimant or injured party, either in general or by Carollo in particular, presumably expecting that the Court will agree with its conclusion based on its statement alone. *Third*, even if its assertion is factually accurate, the result it would have this Court reach is extreme. In essence, it is trying to use the sophistication of current technology to justify restricting a researcher's access to information which only a few years ago it would have had no problem disclosing.

The Court finds it unnecessary to the present proceedings to support with citations to authority its rather obvious obser-

---

**14.** The data field for law firm actually reads "Name of Claimant's/Plaintiff's Law Firm." The Court understands this to mean the law firm of the attorney employed by the claimant/plaintiff.

**15.** Indeed, the VA's concerns with releasing any of the information it has withheld pursuant to exemptions 3 and 6 is that this information will provide the final bits of information

needed by Carollo to put the puzzle together and locate specific individuals. By employing the "mosaic approach," by which it withholds what it believes is key identifying information, the VA presumably believes that it has, thus far, stopped short of disclosing sufficient information with which Carollo could locate actual individuals. (*See* Johnson Decl., Doc. # 17 at Ex. G, ¶ 3.)

vation that the "Internet Age" in which we now live has given rise to quite serious ethical and legal questions about personal privacy, in light of the sheer amount of personal information accessible over the Internet. Be that as it may, it is beyond question that the exercise of finding unpublished decisions, and the names contained therein, an exercise that once required an actual trip to the courthouse, is a rather simple one to any person with a computer and an Internet connection. If a district court maintains a database, as the VA presumes they all do, and one has access to a district court's database, as the VA presumes Carollo does, then it is of little moment that the researcher knows a tort claimant's attorney's name, for there are ample other search terms that may be plugged in to narrow the researcher's focus. Inevitably, a researcher can find the names of claimants and injured parties where such have filed suits. That does not mean the privacy *concerns* are in any way diminished, it simply means that the means of circumventing privacy *protections* are amplified. That, however, is an issue for legislatures, not courts, to address.

The sophistication of online search engines should not be cited by the Government as a justification to withhold information, where no bona fide privacy concern would exist under Exemption 6 were it not for such sophistication. Arguably, any piece of information helps narrow a database search. For instance, the VA has already agreed to release to Carollo the names of treating medical facilities, a piece of information that *might* assist a researcher in narrowing the geographical scope of his search. If the VA's argument were to hold force, federal agencies could use this slippery slope rationale to stop disclosing information altogether.

■ The test, under Exemption 6, of whether information in an individual's file

may be exempted from disclosure is whether its disclosure would constitute a "clearly unwarranted" invasion of personal privacy. Thus, a court is tasked with balancing the right of individuals to be free from unwarranted public scrutiny, as embodied in Exemption 6, against the right of the public as a whole to be informed as to how their government operates, as embodied in the general rule of the FOIA. *See Rose*, 425 U.S. at 372, 96 S.Ct. 1592; *Ray*, 502 U.S. at 175, 112 S.Ct. 541 (observing that Exemption 6 "requires the Court to balance 'the individual's right of privacy' against the basic policy of opening 'agency action to the light of public scrutiny' ")(citing *Rose, supra* ).

Of course, the Court only gets to the Exemption 6 balancing analysis if Exemption 6 is properly invoked in the first instance, and that requires a finding that a privacy interest exists. In fact, Carollo's opposition to the VA's invocation of Exemption 6 in this case is based on this very point. It is not his argument that the public's interest should, pursuant to an Exemption 6 balancing analysis, prevail over the purported privacy interest claimed by the VA, but that the VA has not in fact demonstrated the existence of a privacy interest in the first instance which entitles it to invoke the exemption. This argument has merit.

Carollo has not articulated any specific purpose for, or public interest in, any of the information he seeks, other than to state that he makes his request as a journalist, and that prior investigations in which he has utilized the FOIA have led to stories about federal agencies that have, in turn, led to congressional hearings. (First Carollo Aff. ¶ 9.) As previously noted, the "right of privacy" that the VA points to with respect to its withholding the names of attorneys and law firms is that of the claimants and injured parties. Certainly

one has a privacy interest in one's identity. *See, e.g., Abraham & Rose,* 138 F.3d at 1083. The question is whether it is fair to say that the identities of the claimants or injured parties stand a risk of exposure should the VA release the names of their attorneys and law firms, keeping in mind that the threshold burden the VA must meet is a showing that the disclosure would lead to a "clearly unwarranted" invasion of privacy.

■ The purpose for which information is sought is an irrelevant factor in an agency's determination of whether to disclose: "Congress clearly intended the FOIA to give any member of the public as much right to disclosure as one with a special interest in a particular document." *Dept. of Def. v. Federal Labor Relations Authority ("FLRA"),* 510 U.S. 487, 496, 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994) (citation, internal quotation marks, and alteration omitted). Furthermore, in *Rose,* the Supreme Court stated that the "threats to privacy interests [contemplated by Congress in enacting Exemption 6 were those that are] more palpable than mere possibilities." 425 U.S. at 380 n. 19, 96 S.Ct. 1592.

The VA is not worried about Carollo eliciting private, and no doubt confidential, information about claimants and injured persons directly from their attorneys. Rather, it is concerned solely with the attorney's name becoming the proverbial stick that broke the camel's back; the missing link to identifying private parties. The Court finds, as a matter of fact, that this is speculative and falls within the ambit of footnote 19 in the *Rose* decision. The VA would have the Court view the name of a claimant's attorney as being on par with a claimant's address, telephone number, or social security number and the like.[16] In the Court's opinion, it is not, and the VA has provided no case law demonstrating that other courts have held differently.[17] What is more, the record reveals that, as late as 1994, the VA agreed to release names of attorneys to Carollo in response to a separate FOIA request. (Klein Decl., Doc. #17 at Ex. D, attachment D.1.)

■ The VA's argument is not wholly illogical, it is simply not persuasive. Categorically speaking, an agency tort claimant has no inherent privacy interest in the name of his attorney, a notion the VA does not dispute. (*See* Doc. #17 at 35.) The VA would have this Court find that such an interest exists on the basis that the attorney's name can be converted into a search term by Carollo. It contends that Carollo's purpose is to do just that, and it adduces the Declaration of VHA FOIA Officer Clay Johnson as evidence that Carollo intends to piece together bits of information to identify VHA patients. (Johnson Decl., Doc. #17 at Ex. G, ¶3.) The Court is not persuaded, and finds that this

---

**16.** *See Abraham & Rose,* 138 F.3d at 1083 (recognizing that it is settled that "a clear privacy interest exists with respect to such information as names, addresses and other identifying information"). This Court does not find a claimant's attorney's name, in this instance, constitutes "other identifying information."

**17.** The VA cites to a report by the United States Judicial Conference, published in the Federal Register, to support its concerns over the proliferation of access to what historically were remote public documents. (Doc. #14 at 11.) Be this as it may, the Court reiterates that it is not the inherent nature of the information on record with the VA that tends to open up once private information to the public, but is, rather, the advancements in technology. The VA also advances the argument that "absent technology's ability to gather, sort and search court records based on individually-identifying data, such records are practically obscure." (*Id.* at 12.) The Court is not unmindful of VA's underlying rationale, it is simply not persuasive.

argument, at best, raises a mere possibility of identification. As the Sixth Circuit stated in *Norwood v. Federal Aviation Admin.*, 993 F.2d 570, 574 (6th Cir.1993), "a view of protecting privacy-excluding from disclosure any and all fragments of information that might assist a diligent researcher in identifying a person-is not supportable." Even if it is true that Carollo intends to try to identify tort claim patients, the VA has failed to make a showing that attorney and law firm names are likely to provide his missing link. More importantly, a requester's specific intent is not a ground on which the VA may withhold information that could for other requesters be disclosed. Information either is or is not accessible by the public; the requester's identity and purpose is irrelevant. *See FLRA*, 510 U.S. at 496, 114 S.Ct. 1006; *Reporters Committee*, 489 U.S. at 771, 109 S.Ct. 1468.[18]

If it is true, as the VA contends (but has not demonstrated), that an attorney's name will lead to the identification of protected identities when used *in conjunction* with other information already provided, then nothing stops the VA from applying this rationale to any other piece of information: today it discloses the name of the treating medical facilities but withholds the names of attorneys; tomorrow the reverse is true. Such a shotgun approach would lead to inconsistent FOIA results. With respect to individual TCIS files, the VA has already agreed to disclose, among other data, the date of the alleged tort, the date the tort claim was filed, the treating medical facility, the date a suit was filed, and the name of the court in which the suit was filed. Given that the VA, in its discretion, considers all of this information insufficient to directly identify an individual named in the TCIS records, the Court finds it a specious assertion that the name of an attorney or law firm is any more private or revealing.

As for the attorney and law firm names representing claimants who never filed lawsuits, the Court finds that the VA has failed to supply any basis for withholding such under Exemption 6. As for those names related to claimants who did file lawsuits, the Court finds that the disclosure of attorney and law firm names would not constitute a *clearly unwarranted* invasion of personal privacy, and that, again, Exemption 6 was improperly invoked. Therefore, as to this disputed category of information, the Court OVERRULES the VA's Motion, and SUSTAINS Carollo's Motion.

### c. *name of presiding judge*

 The VA argues that the names of presiding judges should be withheld on the same Exemption 6 ground as that submitted with respect to attorney and law firm names. That is to say, it is not the privacy of the judge that is being protected, but, rather, the privacy of claimants or injured persons, insofar as they could be identified were the names of presiding judges re-

---

**18.** *But see Ray*, 502 U.S. at 177, 112 S.Ct. 541, in which the Supreme Court stated, with regard to requesters who were seeking identifying information, that it should not "overlook the fact that [requesters] plan to make direct contact with the individual[s] . . . identified in the reports." This statement, probably dictum, does not seem to square with the rule, announced in *Reporters Committee* and *FLRA,* that purpose is irrelevant when deciding whether information may or may not be disclosed under the FOIA. To view a specific purpose as a limitation on the release of otherwise valuable information runs head-on into the teaching of *Reporters Committee* and *FLRA* to the contrary. Purpose only becomes important, and then only to the court, once the agency has raised a genuine privacy interest and the court is obligated to conduct an Exemption 6 balancing analysis. Purpose should not be analyzed to help construct a privacy interest in the first instance. Whatever the import of the language quoted from *Ray,* the Court finds *FLRA* controlling.

leased. Carollo's position, again, is that there is no privacy interest at issue and that Exemption 6 is inapplicable.

As with attorney and law firm names, the Court finds that the connection between the disclosure of a judge's name and the identification of an individual is attenuated. The privacy interest one has in the name of the judge who presided over his lawsuit is purely speculative, at least in the absence of any evidence demonstrating that the revelation of the judge's name would lead to the discovery of the individual's name.[19] The VA's position is even more suspect given that the name of the judge's court has already been revealed. Accordingly, with respect to the names of presiding judges, the Court SUSTAINS Carollo's Motion and OVERRULES the VA's Motion.

d. *birth dates of patient and surviving spouses*

 The VA contends that dates of birth are personal identifiers, and that a privacy interest exists in them in the same way a privacy interest exists in a name or a social security number. The VA does not discuss the date of birth issue in its Memoranda other than to lump it in with "name" and "social security number" and the like in its general classification of information that "directly identifies" individuals. The Court does not agree that dates of birth "directly" identify individuals. On their own, dates of birth are practically irrelevant. Dates of birth are only helpful in identifying individuals where other identifying information is already known, and the date of birth can be used to narrow the choices. In *Washington Post*, the Supreme Court observed that information "such as place of birth, date of birth, date of marriage, employment history, and comparable data is not normally regarded as highly personal." 456 U.S. at 600, 102 S.Ct. 1957. It admitted, however, that where such information was kept in confidential files, the disclosure of such information would be exempt *from any disclosure that would constitute a clearly unwarranted invasion of personal privacy. Id.* The *Washington Post* Court was not directly addressing the "date of birth" issue, and its mere reference to such a piece of in-

---

19. In *FLRA*, the Supreme Court noted that, within the Exemption 6 balancing analysis, "a very slight privacy interest would suffice to outweigh" the relevant public interest, which it had found to be "negligible at best." 510 U.S. at 497 & 500, 114 S.Ct. 1006. *See also National Assoc. of Retired Federal Employees v. Horner*, 879 F.2d 873, 879 (D.C.Cir.1989)("[S]omething, even a modest privacy interest, outweighs a [non-existent public interest] every time."). The Court finds it important to distinguish what is meant by "slight" from what is meant by "speculative" or "hypothetical." A "slight" privacy interest is a privacy interest nonetheless; a "speculative" or "hypothetical" privacy interest is not. Thus, while it need only be slight, a privacy interest must at least exist in fact, not theory. For example, an individual may be said to have a significant privacy interest in his work phone number. By comparison, he may also have a privacy interest in the work telephone number of his business partner, but here, his privacy interest would be slight because it provides only indirect access to him. Thus, a "slight privacy interest" can be understood as one of a lesser magnitude, but one which can, nonetheless, be invaded in a "clearly unwarranted" fashion as much as a greater one.

In contrast is a privacy interest which *may* exist only if a certain chain of events unfolds. The interest in a presiding judge's name, or an attorney's name, to the extent such names are used as search terms in a database search, is one that is not properly characterized as "slight," but, rather, one that is speculative or hypothetical. One cannot invoke Exemption 6 where the asserted interest is of this sort. *Cf. Rose*, 425 U.S. at 382, 96 S.Ct. 1592 ("Exemption 6 does not protect against disclosure every *incidental* invasion of privacy ....")(emphasis added).

formation in explaining why the "similar files" language of Exemption 6 was not to be limited to those on a categorical par with "personnel or medical" files, the terms preceding it in 5 U.S.C. § 552(b)(6), should not be construed as a categorical recognition of the inherent privacy of such. The Court's point was merely that if certain information in "personnel or medical" files were exempt *when its disclosure would constitute a clearly unwarranted invasion of personal privacy,* then there is no reason why that same information should not be exempt when contained in other files, regardless of the file's label. Nonetheless, if disclosure would *not* constitute a clearly unwarranted invasion of privacy, then an exemption for such should not be recognized.

The VA has failed to make a showing, other than its own conclusory statement, that dates of birth "directly identify" individuals. Because the Court does not find that birth dates can independently identify individuals, and because the VA has not released any other information that may be used in conjunction with birth dates to identify individuals, the general disclosure rule of the FOIA must prevail. Accordingly, as to birth dates, the VA's Motion is OVERRULED and Carollo's Motion SUSTAINED.

### e. *remarks redacted pursuant to asserted privileges*

██ The VA asserts that it redacted, pursuant to Exemption 5, various notations recorded in the TCIS records that were made in contemplation of litigation and which would otherwise constitute privileged materials. (Doc. # 1 at Ex. 4, at 2; Dodson Decl., attachment C.8.) Of the disputed information noted above, the Exemption 5 redactions concern the undisclosed portions of the description of the alleged negligence, and any undisclosed remarks pertaining to a claim's (or case's) status.

Obviously, the Court cannot rule on this issue until it has a better understanding of the content of the information redacted. The record is deficient in this regard. Accordingly, the VA is hereby ordered to file with the Court what is known as a Vaughn Index, a document which summarizes for the Court what redactions have been made pursuant to an Exemption 5 argument, and the content of the redactions. *See Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973). The Vaughn Index should comport with the following criteria: (1) the index should be contained in one document, complete in itself; (2) it must adequately describe each deletion from a released document; (3) the index must state the exemption claimed for each deletion (which, in this case, will be Exemption 5), and explain why the exemption is relevant. *Osborn v. I.R.S.,* 754 F.2d 195, 196 (6th Cir.1985) (citation omitted). With respect to criteria (2) and (3), the VA need not reveal the entirety of that information which it wishes to withhold, but must give an adequate enough explanation so that Carollo can make an informed argument in opposition to non-disclosure and the Court can make its own finding as to whether the privilege claimed pursuant to Exemption 5 is meritorious. *Id.*

### f. *names of injured persons who filed suit or had a suit filed on their behalf, or who have died*

Carollo seeks names for those injured parties who have filed lawsuits or who have had suits filed on their behalf, and those who have died, either while in the course of prosecuting their tort claims or subsequently. With respect to lawsuits, it is his argument that the filing of a lawsuit places all information contained therein within the public domain. With respect to death, it is his argument that all personal privacy interests expire upon the death of the person whose privacy is being protect-

ed. Again, the VA relies on Exemption 6 in objecting to the disclosure of this information. The Court will discuss the implications of death and the filing of lawsuits in turn.

### i. *effect of the death of the injured person*

■■ As an initial matter, the Court must again distinguish between claimants and injured parties, persons who may, but need not, be one in the same relative to a tort claim filed against the VA.[20] With respect to claimants who filed their claims on behalf of third-party injured persons, because the privacy interests which the VA is obligated to respect include those of any private individual who can be identified in its records, the claimant's right of privacy survives the death of the injured person on whose behalf she filed the claim. The VA contends that the claimant's privacy interest in the claim record extends to the name of the injured person. The Court agrees that a privacy interest exists in such. It readily can be imagined that if the name of a deceased loved one or friend were to appear unexpectedly in some news article, the claimant's own veil of privacy, to some extent, would be penetrated by the disclosure. Irrespective of the degree of his privacy interest, it clearly exists. Thus, an Exemption 6 balancing analysis is appropriate.

■■ The public interest in the names of deceased alleged tort victims is not readily apparent and Carollo makes no effort to inform the Court of what it is. It cannot be to interview them about their experiences, for that is an impossible undertaking as things stand, and would be impermissible even if the persons were alive, absent their consent. Perhaps the requester could investigate the lives of the deceased individuals so that the public might learn more about their characters and characteristics, but this pursuit would not so much serve the goals of the FOIA, which is to educate the public about its government, as it would merely shed light on individuals who had relationships with the government, an object with which the FOIA is not concerned. On the other hand, disclosure might serve the public's interest to the extent the requester could track down family members who are not identified in the TCIS records and to whom the VA owes no duty of privacy or confidentiality. In turn, such interviews with family members may lead to insights into the workings of the VA. Of course, while the VA owes no direct duty of privacy to family members who are not the subjects of their records, the ordinary privacy interests of such family members is a consideration that the Court feels significantly lessens the force of this public benefit.

On balance, the Court finds that the very real privacy interest that a living claimant has in the TCIS records, including in the name of the deceased party on whose behalf he filed the claim, outweighs the hypothetical benefit the public might enjoy were Carollo to investigate the treatment of deceased parties by tracking down and interviewing friends and family of said parties. It is true that lists of names should not always be withheld. *See Ray*, 502 U.S. at 176, n. 12, 112 S.Ct. 541. However, in this instance, because the privacy interest of the claimants is more apparent than any possible public interest in the names' disclosure, the VA need not disclose the names to Carollo. As the Supreme Court stated in *Ray*, "[m]ere speculation about hypothetical public bene-

---

20. To the extent injured parties were their own claimants, Carollo's position herein is inconsistent, in that he seeks the names of the former but not of the latter. (*See* Doc. # 15 at 7.)

fits cannot outweigh a demonstrably significant invasion of privacy." *Id.* at 179, 112 S.Ct. 541.[21]

 With respect to injured persons who were also their own claimants, Carollo argues that any privacy interest they might have had, and which the VA seeks to protect, was extinguished by their deaths. The Court disagrees. While not articulating what privacy interest remains after a claimant (who was also the injured party) dies, the VA maintains that it is settled law in this Circuit that the Exemption 6 privacy interest, whatever it may be in any given case, in contradistinction to the common law right to privacy, does not lapse. (Doc. # 17 at 30.) Indeed, in the case to which the VA turns for support, *Kiraly*, 728 F.2d 273, the Sixth Circuit addressed a situation in which the FBI had withheld certain information concerning a deceased witness pursuant to 5 U.S.C. § 552(b)(7)(C)("Exemption 7(C)"), which, like Exemption 6, also protects certain private information.[22] Adopting the district court's rationale as its own, the court held that just because "the right to recovery for invasion of privacy lapses upon the person's death does not mean that the government must disclose inherently private information as soon as the individual dies, especially when the public's interest ... is minimal." 728 F.2d at 277. The court then noted that it found no authority for the proposition that the FOIA privacy exemption lapses upon death. *Id.* at 277–78.

This Court has not found any intervening case law demonstrating that the law articulated in *Kiraly* has been abolished.[23] Thus, within the FOIA context, the same privacy interests that a person may have in his name when he is alive, such as the right to be left alone, the right to be free of harassment or humiliation, the right to closure, and the like, survive his death. If this seems odd, it is worth repeating that the *Kiraly* court rendered its holding where the facts demonstrated that "the public's interest in the information [was] minimal." Thus, just as a list of names will not always be beyond disclosure even where the named individuals are living, neither will names of deceased parties always be protected. The outcome turns on the competing interests. Here, the public's interest in the release of the names is not evident, and could only be furthered if Carollo first tracked down any related individuals who might in turn be able to shed light on how the VA handled the deceased injured party's tort claim or how it might have precipitated the tort claim in the first instance. Had Carollo actually made this argument and explained its parameters to the Court, the Court might find it meritorious. He did not make this argument, however, and given the potential for the invasion of privacy into the

---

**21.** Between the Supreme Court's statement in *Rose* that a privacy interest must be more than merely speculative, 425 U.S. at 380, n. 19, 96 S.Ct. 1592, and this statement in *Ray* that an asserted public interest must also be more than merely speculative, it is obvious that where one side to the argument hangs on a purely theoretical position, that party will not carry the day under the privacy/public interest balancing test.

**22.** Exemption 7 in general sets forth a number of limited exemptions related to "records or information compiled for law enforcement purposes." Specifically, Exemption 7(C) is

effective "to the extent that the production of such law enforcement records or information ... could reasonably be expected to constitute an unwarranted invasion of personal privacy."

**23.** Although *Kiraly* dealt more specifically with Exemption 7(C), there is no reason to think that, given the similarity of the language of the two provisions, *see Akron Standard Div. of Eagle–Picher Indus., Inc. v. Donovan*, 780 F.2d 568, 571 (6th Cir.1986), the importance of a privacy interest under Exemption 6, once identified, is any less than one under Exemption 7(C).

lives of those Carollo would have to track down were the information he seeks disclosed, the Court will not overlook the privacy rights which the VA seeks to protect in favor of a hypothetical benefit of disclosure.

On balance, because Carollo has not articulated a public interest, and because the Court's own hypothetical public interest cannot outweigh the demonstrable privacy interest, the privacy interest prevails. While time itself may erode the importance of keeping records of deceased individuals private, arguments to this effect were not submitted, and the Court finds nothing to be gained by considering, on its own, such an effect. Accordingly, Carollo is not entitled to the release of any names of deceased individuals on whom the VA maintains TCIS records. With respect to this issue, the VA's Motion is SUSTAINED, and Carollo's OVERRULED.

### ii. *effect of claimant filing a lawsuit*

 Carollo argues that when a claimant files a lawsuit, the information made public by the lawsuit, a name in particular, necessarily loses its flavor of privacy. The VA disagrees, contending that a privacy interest remains, notwithstanding the filing of the suit. The Court notes that the privacy interest in non-disclosure and the public's interest in disclosure are those noted in the previous discussion. On balance, the Court agrees with the VA that the privacy interest outweighs the public's interest. The privacy interest is even stronger here than it is with respect to names of deceased persons, because those injured parties still living have a strong interest in not being subjected to public scrutiny without their consent.

As for the law in this area, it has been noted that a privacy interest is not necessarily lost simply because at one time private facts were placed in the public domain. *See Reporters Committee,* 489

U.S. at 762–770, 109 S.Ct. 1468 (information contained on rap sheets retains its private nature for FOIA purposes); *FLRA,* 510 U.S. at 500, 114 S.Ct. 1006 (information readily available in phone books or public voter registration lists retain their private nature for FOIA purposes); *Abraham & Rose,* 138 F.3d at 1075 (information contained in federal tax lien filings retains its private nature for FOIA purposes). Carollo cites *Doe v. Lockwood,* 89 F.3d 833, 1996 WL 367046 (6th Cir.1996), for the proposition that all rights of privacy are lost once private facts are revealed in a court of law. The Court disagrees, finding *Doe* readily distinguishable. *Doe* concerned a suit by plaintiffs that their constitutional rights to the privacy of information were violated when certain government officials publicly revealed one of the plaintiff's HIV—status, a fact the plaintiff had already personally revealed in open court. The Sixth Circuit held that the revelation of once-private information in a court of law vitiates any claim to a constitutional right of privacy to that same information. *Id.* at *4–5.

This holding is unremarkable, and inapplicable to the case at bar. *First,* Doe had nothing to do with FOIA jurisprudence, and was concerned solely with the parameters of a constitutional right of privacy. *Second,* and more importantly, in finding that one who revealed information in open court could not later claim a privacy interest in that information, the *Doe* court was addressing a situation in which defendant government officials revealed information about which they had knowledge from the plaintiff's court revelations. *Id.* at *2. At best, *Doe* might be read for the proposition that claimants named in the VA's TCIS records would have no constitutional cause of action against the VA, if the VA chose to reveal those names of claimants who had filed lawsuits. Be that as it may, it would be illogical to convert this proposi-

tion into a rule *requiring* the VA to disclose such names.

If otherwise private information can be obtained through a search of court records, so be it; such a fact does not mean the VA is obligated to relinquish its own duty of protecting private information within its possession. *See Reporters Committee*, 489 U.S. at 764, 109 S.Ct. 1468; *Rugiero v. United States Dep't of Justice*, 257 F.3d 534, 545 (6th Cir.2001) (stating that "no diminution of privacy interests occurs despite the fact that the identifying information is already publicly available"). While the Court has already made note of the fact that, given the ubiquity of current computer database search engines, a researcher today can search with great efficacy for names that once took a good deal more time and patience to access, the fact that such records are readily available does not mean that they have lost all traits of privacy, or that the government has no duty to protect private information. Both sides must contend with modernity: the researcher cannot claim that private records are no longer private simply because they are accessible through other means; nor can the government claim non-private information is private just because it might be integrated into a database search which in some remote way might lead to the discovery of otherwise private information.

Here, a privacy interest remains, and the benefit to the public if the names were released is small. Accordingly, Carollo is not entitled to the release of any names. On this issue, the VA's Motion is SUSTAINED, and Carollo's OVERRULED.

### g. *Exemption 3*

Because the Court finds that the matters raised herein which might otherwise implicate Exemption 3 can be disposed of on either Exemption 5 or Exemption 6 grounds, it has no need to discuss the merits of the VA's arguments with respect to Exemption 3, as raised in conjunction with 38 U.S.C. §§ 5701 and 7332.[24]

### III. *Conclusion*

Based on the rationale and citations to authority set forth above, the Court finds Defendant's Motion to Dismiss (Doc. # 17-1) not well taken and it is hereby OVERRULED. Defendant's Alternative Motion for Summary Judgment (Doc. # 17-2) is well taken and is hereby SUSTAINED with respect to Plaintiffs' FOIA request for information concerning the city, state and zip code of claimants, any other tort claim information not maintained by the OGC, and the names of injured parties, regardless of whether they are deceased or were named in a lawsuit. With respect

---

**24.** Subject to certain exceptions, 38 U.S.C. § 5701(a) prohibits the disclosure of "names and addresses" of present or former members of the Armed Forces. Given that Carollo is not seeking addresses, and that the Court has determined, pursuant to Exemption 6, that he is not entitled to the names of any claimants, which would include veterans, the Court need not determine the applicability of this statute. Regarding 38 U.S.C. § 7332, subject to certain exceptions, it prohibits the disclosure of the "identity, diagnosis, prognosis, or treatment of any patient or subject which are maintained *in connection* with the performance of any program or activity ... relating to drug abuse, alcoholism or alcohol abuse,

infection with [HIV], or sickle cell anemia...." (Emphasis added.) Because Carollo seeks only information maintained "in connection" with tort claims, and does not seek any such information maintained "in connection" with any of the above-listed programs or activities, and, furthermore, because none of the information which the Court has determined should be disclosed implicates the subject matter of this statute, it, too, is inapplicable. Furthermore, the VA's reliance on § 7332 at this time is somewhat disingenuous, given the fact that it was not a stated basis for denying Carollo's FOIA appeal. (*See* Doc. # 1 at Ex. 4.)

to the same categories of information, Plaintiffs' Motion for Summary Judgment (Doc. # 11) is not well taken and is hereby OVERRULED. Defendant's Motion for Summary Judgment is not well taken and is hereby OVERRULED with respect to Plaintiffs' FOIA request for the names of attorneys, law firms, presiding judges and the dates of birth of patients and their spouses. With respect to the same categories of information, Plaintiffs' Motion is well taken and is hereby SUSTAINED.

With respect to the issue of whether Defendant properly withheld certain information pursuant to Exemption 5, namely, that related to descriptions of alleged negligence and remarks pertaining to the status of a claim or case, Defendant is hereby given sixty (60) days to submit a Vaughn Index, as discussed *supra*. To the extent it deems it necessary, it may attach a supplemental memorandum of law. However, it should limit its legal argument to points of law not otherwise discussed herein. Plaintiffs may file a response memorandum pursuant to S.D. Ohio Civ. R. 7.2(a)(2), but are also directed to limit their legal arguments to relevant points of law not discussed herein.